**Robert PROCUP, Plaintiff,**

v.

**C. STRICKLAND, R. Dugger, D. Watson, M. Franks, and Two Unnamed Prison Notaries, Defendants.**

**No. 83–351–Civ–J–14.**

United States District Court, M.D. Florida, Jacksonville Division.

June 17, 1983.

Robert Procup, pro se.

Dean Kowalchyk, Asst. Atty. Gen., Dept. of Legal Affairs Tallahassee, Fla., for defendants.

## OPINION

SUSAN H. BLACK, District Judge.

On May 6, 1983, the Court entered an Order to Show Cause,[1] permitting plaintiff

---

1. The entire text of that order reads as follows:

ORDER TO SHOW CAUSE

The Court is cognizant of the volume and nature of lawsuits filed by plaintiff in this district during the past several years. In fact, the instant action is one of five additional civil rights cases filed by plaintiff in this division in the past week. The Court is concerned that plaintiff is and has been engaging in an abuse of the judicial process. Therefore, plaintiff will be permitted thirty days from the date of this order in which to show cause why the Court should not issue an injunction pursuant to the All Writs Act, 28 U.S.C. § 1651(a), prohibiting

plaintiff from filing any further pleadings in the courts of this district.

Accordingly, it is
ORDERED:

1. That plaintiff shall have thirty (30) days from the date of this order in which to show cause why the Court should not enter an injunction prohibiting him from filing any further pleadings in the courts of this district.

2. That the Office of the Attorney General of the State of Florida shall have thirty (30) days from the date of this order in which to present to the Court its position on this matter.

thirty days in which to demonstrate why the Court should not enter an injunction prohibiting him from filing any further pleadings in the courts of this district. In that order, the Court also allowed the Attorney General of the State of Florida thirty days in which to make his position known. The Court has received and reviewed the pleadings submitted by both parties.

As indicated in its Order to Show Cause, the Court is concerned that plaintiff is and has been engaging in an abuse of the judicial process. Because the Court is empowered under the All Writs Act, 28 U.S.C. § 1651(a),[2] to enjoin a litigant who repeatedly files groundless and vexatious claims or who otherwise abuses the judicial

process, *see In re Oliver,* 682 F.2d 443 (3d Cir.1982), the Court will review plaintiff's history of litigation to determine whether such sanctions may be appropriately applied against him.

## I. BACKGROUND

Robert Procup was received by the Florida Department of Corrections on June 3, 1975, under a sentence of life imprisonment for murder in the first degree. Pursuant to Fla.Stat. § 775.082(1), Procup must serve no less than twenty-five years in prison before becoming eligible for parole. Procup has been incarcerated at Florida State Prison and Union Correctional Institution during his term of confinement.[3] The terms

---

DONE AND ORDERED at Jacksonville, Florida, this 6 day of May, 1983.

/s/ Susan H. Black
UNITED STATES DISTRICT JUDGE

2. Section 1651(a) of Title 28, United States Code, otherwise known as the All Writs Act, states that:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

3. Both Union Correctional Institution and Florida State Prison are located within the Jacksonville Division of the Middle District of Florida. These institutions generally house the state's most serious offenders, in addition to those inmates who have posed disciplinary or security problems at other institutions. The inmate and institutional profiles support these general statements.

In Florida, inmates are classified in one of three different levels of custody—close, medium, or minimum custody.

With respect to *close custody* inmates, the following characteristics are found:

91% were convicted of a violent crime (murder, aggravated assault, rape, etc.)
19% are serving a sentence of 7 to 10 years
56% are serving a sentence in excess of 10 years
59% have had a major disciplinary report in the past six months

Union

| | |
|---|---|
| 2236 | close custody inmates |
| 245 | medium custody inmates |
| 116 | minimum custody inmates |

22% have attempted to escape within the past 5 years
36% are adjusting satisfactorily to institutional confinement

As to *medium custody* inmates, the following characteristics appear:

74% were convicted of a violent crime
21.5% are serving a sentence of 7 to 10 years
40% are serving a sentence in excess of 10 years
32% have had a major disciplinary report in the past six months
8% have attempted to escape in the last 5 years
62% are adjusting satisfactorily to institutional confinement

With regard to *minimum custody* inmates, the following traits are evidenced:

4.5% were convicted of a violent crime
18% are serving a sentence of 7 to 10 years
18% are serving a sentence in excess of 10 years
7.6% have had a major disciplinary report in the last six months
3% have attempted to escape in the past 5 years
90.9% are adjusting satisfactorily to institutional confinement

As of March, 1983, Union Correctional Institution and Florida State Prison housed the following breakdown of inmates:

FSP

| | |
|---|---|
| 1141 | close custody inmates |
| 259 | medium custody inmates |
| 217 | minimum custody inmates |

---

The following graphic display also reveals a comparative analysis between the inmates of Union Correctional Institution and Florida State Prison and the inmates incarcerated throughout the state of Florida:

and conditions of his confinement at these institutions form the basis for nearly all his actions brought in this division.

Procup filed his first complaint in this division on August 4, 1977. He filed only one other case during the remainder of 1977, and did not file a single action during 1978. However, beginning in 1979 and continuing through this date, Procup has filed civil rights actions under 42 U.S.C. § 1983, *pro se, in forma pauperis,* at an alarmingly rapid rate. Procup's onslaught has inundated the civil docket to the detriment of other claimants seeking a prompt resolution of their disputes.

To date, Procup has filed the following cases in the United States District Court for the Middle District of Florida, Jacksonville Division:[4] *Procup v. Wainwright, et al.,* Case No. 77–585–Civ–J–S; *Procup v. Wainwright, et al.,* Case No. 77–961–Civ–J–M; *Procup v. Darby,* Case No. 79–565–Civ–J–M; *Procup v. Lea, et al.,* Case No. 79–587–Civ–J–M; *Procup v. Pepper,* Case No. 79–665–Civ–J–M; *Procup v. Watson, et al.,* Case No. 79–673–Civ–J–M; *Procup v. Barlow, et al.,* Case No. 79–680–Civ–J–M; *Procup v. Brierton, et al.,* Case No. 79–816–Civ–J–M; *Procup v. Brierton, et al.,* Case No. 79–817–Civ–J–M; *Procup v. Brierton,* Case No. 79–828–Civ–J–M; *Procup v. Lea, et al.,* Case No. 79–881–Civ–J–M; *Procup v. Strickland, et al.,* Case No. 80–108–Civ–J–M; *Procup, et al. v. Graham, et al.,* Case No. 80–169–Civ–J–M; *Procup v. Savage, et al.,* Case No. 80–273–Civ–J–M; *Procup v. Workman, et al.,* Case No. 80–278–Civ–J–M; *Procup v. Anderson, et al.,* Case No. 80–303–Civ–J–B; *Procup v. Sewell, et al.,* Case No. 80–304–Civ–J–M; *Procup v. Brigham, et al.,* Case No. 80–305–Civ–J–M; *Procup v. Harrington, et al.,* Case No. 80–324–Civ–J–B; *Procup v. Anderson, et al.,* Case No. 80–332–Civ–J–B; *Procup v. Dugger,* Case No. 80–387–Civ–J–M; *Procup v. Sands,* Case No. 80–389–Civ–J–M; *Procup v. Harrington,* Case No. 80–390–Civ–J–M; *Procup v. Strickland,* Case No. 80–391–Civ–J–M; *Procup, et al. v. Barlow,* Case No. 80–392–Civ–J–M; *Procup v. Anderson, et al.,* Case No. 80–393–Civ–J–M; *Procup v. Anderson, et al.,* Case No. 80–412–Civ–J–M; *Procup v. Anderson, et al.,* Case No. 80–413–Civ–J–M; *Procup v. Bigham, et al.,* Case No. 80–416–Civ–J–M; *Procup v. Jarvis, et al.,* Case No. 80–417–Civ–J–M; *Procup v. Whitworth, et al.,* Case No. 80–430–Civ–J–B; *Procup v. Anderson, et al.,* Case No. 80–439–Civ–J–M; *Procup v. Wainwright, et al.,* Case No. 80–440–Civ–J–M; *Procup v. Belz,* Case No. 80–474–Civ–J–B; *Procup v. Anderson, et al.,* Case No. 80–559–Civ–J–M; *Procup v. Dugger, et al.,* Case No. 80–560–Civ–J–M; *Procup v. Dugger, et al.,* Case No. 80–561–Civ–J–M; *Procup v. Van Eeden, et al.,* Case No. 80–580–Civ–J–M; *Procup v. Dugger,* Case No. 80–581–Civ–J–M; *Procup v. Anderson, et al.,* Case No. 80–582–Civ–J–M; *Procup v. Jarvis, et al.,* Case No. 80–590–Civ–J–M; *Procup v. Strickland, et al.,* Case No. 80–591–Civ–J–M; *Procup v. Wilson, et al.,* Case No. 80–592–Civ–J–M; *Procup v. Anderson, et al.,* Case No. 80–593–Civ–J–M; *Procup v. Dugger, et al.,* Case No. 80–606–Civ–J–M; *Procup v. Dugger, et al.,* 80–607–Civ–J–M; *Procup v. Dugger,* Case No. 80–608–Civ–J–M; *Procup v. Pilcher,* Case No. 80–609–Civ–J–M; *Procup v. Dugger, et al.,* Case No. 80–610–Civ–J–B; *Procup v. Anderson, et al.,* Case No. 80–611–Civ–J–M; *Procup v. Seely, et al.,* Case No. 80–629–Civ–J–B; *Procup v. Anderson, et al.,* Case No. 80–630–Civ–J–M; *Procup v. Seely, et*

|  | Union | FSP | Statewide |
|---|---|---|---|
| Committed homicide | 28% | 31% | 14% |
| Committed robbery | 22% | 20% | 24% |
| Average length of sentence (not including life or death sentences) | 27.7 yrs. | 26.6 yrs. | 11 yrs. |

The foregoing institutional data were taken from studies entitled *Profile of Major Institutions, Survey of Institutional Population by Custodial Classification,* and *Evaluation of Uniform System of Custody Classification,* compiled by the Florida Department of Corrections in 1983.

4. A court may take judicial notice of its own records, and it has authority to consult those records for the purpose of determining whether an action being prosecuted *in forma pauperis* is in fact frivolous or malicious. *Duhart v. Carlson,* 469 F.2d 471, 473 (10th Cir.1972).

al., Case No. 80–631–Civ–J–B; *Procup v. Anderson, et al.,* Case No. 80–632–Civ–J–M; *Procup v. Dugger, et al.,* Case No. 80–633–Civ–J–M; *Procup v. Bigham, et al.,* Case No. 80–642–Civ–J–M; *Procup v. Hartsfield, et al.,* Case No. 80–644–Civ–J–B; *Procup v. Seely, et al.,* Case No. 80–645–Civ–J–B; *Procup v. Turner, et al.,* Case No. 80–646–Civ–J–B; *Procup v. Anderson, et al.,* Case No. 80–647–Civ–J–M; *Procup v. Harrington, et al.,* Case No. 80–679–Civ–J–M; *Procup v. Anderson, et al.,* Case No. 80–680–Civ–J–M; *Procup v. Anderson, et al.,* Case No. 80–803–Civ–J–B; *Procup v. Pepper,* Case No. 80–804–Civ–J–B; *Procup v. Morin,* Case No. 80–805–Civ–J–B; *Procup v. Dugger,* Case No. 80–818–Civ–J–WC; *Procup v. Anderson, et al.,* Case No. 80–819–Civ–J–WC; *Procup v. Baxter, et al.,* Case No. 80–820–Civ–J–WC; *Procup v. Strickland, et al.,* Case No. 80–825–Civ–J–WC; *Procup v. Dugger,* Case No. 80–826–Civ–J–WC; *Procup v. Watson,* Case No. 80–867–Civ–J–M; *Procup v. Workman,* Case No. 80–888–Civ–J–M; *Procup v. Wainwright, et al.,* Case No. 80–891–Civ–J–M; *Procup v. Watson,* Case No. 80–892–Civ–J–M; *Procup v. Brierton, et al.,* Case No. 80–903–Civ–J–WC; *Procup v. Strickland,* Case No. 80–905–Civ–J–M; *Procup v. Strickland, et al.,* Case No. 80–906–Civ–J–WC; *Procup v. Deering,* Case No. 80–907–Civ–J–WC; *Procup v. Harris,* Case No. 80–908–Civ–J–M; *Procup v. Strickland, et al.,* Case No. 80–909–Civ–J–B; *Procup v. Dugger,* Case No. 80–910–Civ–J–M; *Procup v. Pepper,* Case No. 80–911–Civ–J–B; *Procup v. Dugger, et al.,* Case No. 80–934–Civ–J–WC; *Procup v. Vodt, et al.,* Case No. 80–963–Civ–J–WC; *Procup v. Wilson,* Case No. 80–1060–Civ–J–M; *Procup v. Strickland, et al.,* Case No. 80–1085–Civ–J–B; *Procup v. Seely, et al.,* Case No. 80–1100–Civ–J–WC; *Procup v. Watson, et al.,* Case No. 80–1106–Civ–J–B; *Procup v. Barlow,* Case No. 80–1107–Civ–J–M; *Procup v. Wilson, et al.,* Case No. 80–1133–Civ–J–M; *Procup v. Eddy,* Case No. 81–42–Civ–J–WC; *Procup v. Anderson, et al.,* Case No. 81–43–Civ–J–B; *Procup v. Strickland, et al.,* Case No. 81–124–Civ–J–B; *Procup v. Wainwright, et al.,* Case No. 81–127–Civ–J–M; *Procup v. Watson, et al.,* Case No. 81–167–Civ–J–M; *Procup v. Anderson, et al.,* Case No. 81–225–Civ–J–B; *Procup v. Linnehan, et al.,* Case No. 81–227–Civ–J–M; *Procup v. Wainwright, et al.,* Case No. 81–229–Civ–J–WC; *Procup v. Decker, et al.,* Case No. 81–253–Civ–J–B; *Procup v. Brown,* Case No. 81–254–Civ–J–WC; *Procup v. Rising, et al.,* Case No. 81–261–Civ–J–WC; *Procup v. Anderson, et al.,* Case No. 81–262–Civ–J–JHM; *Procup v. Roberts, et al.,* Case No. 81–263–Civ–J–WC; *Procup v. Barlow, et al.,* Case No. 81–264–Civ–J–B; *Procup v. Harris,* Case No. 81–265–Civ–J–B; *Procup v. Watson, et al.,* Case No. 81–301–Civ–J–M; *Procup v. Watson,* Case No. 81–302–Civ–J–M; *Procup v. Graham,* Case No. 81–316–Civ–J–WC; *Procup v. Linnehan, et al.,* Case No. 81–317–Civ–J–B; *Procup v. Wainwright, et al.,* Case No. 81–318–Civ–J–B; *Procup v. Pages,* Case No. 81–322–Civ–J–B; *Procup v. Andrews,* Case No. 81–324–Civ–J–B; *Procup v. Terry, et al.,* Case No. 81–326–Civ–J–WC; *Procup v. Dayan,* Case No. 81–360–Civ–J–B; *Procup v. Watson, et al.,* Case No. 81–368–Civ–J–M; *Procup v. Barlow,* Case No. 81–377–Civ–J–M; *Procup v. Frank, et al.,* Case No. 81–378–Civ–J–M; *Procup v. Dugger, et al.,* Case No. 81–411–Civ–J–WC; *Procup v. Smith, et al.,* Case No. 81–416–Civ–J–B; *Procup v. Watson, et al.,* Case No. 81–438–Civ–J–B; *Procup v. Kemp, et al.,* Case No. 81–439–Civ–J–M; *Procup v. Bigham, et al.,* Case No. 81–474–Civ–J–B; *Procup v. Harrington,* Case No. 81–482–Civ–J–WC; *Procup v. Strickland,* Case No. 81–483–Civ–J–M; *Procup v. Strickland,* Case No. 81–492–Civ–J–B; *Procup v. Novak,* Case No. 81–515–Civ–J–B; *Procup v. Linnehan, et al.,* Case No. 81–519–Civ–J–B; *Procup v. Lee,* Case No. 81–521–Civ–J–M; *Procup v. Six Unnamed Prison Administrators, et al.,* Case No. 81–570–Civ–J–M; *Procup v. Davis, et al.,* Case No. 81–615–Civ–J–B; *Procup v. Lehr,* Case No. 81–653–Civ–J–WC; *Procup v. Decker,* Case No. 81–682–Civ–J–B; *Procup v. Dayan, et al.,* Case No. 81–692–Civ–J–JHM; *Procup v. Watson, et al.,* Case No. 81–702–Civ–J–B; *Procup v. Graham, et al.,* Case No. 81–720–Civ–J–JHM; *Procup v. Big-*

ham, et al., Case No. 81–775–Civ–J–B; Procup v. Watson, et al., Case No. 81–848–Civ–J–M; Procup v. Watson, et al., Case No. 81–974–Civ–J–B; Procup v. Watson, et al., Case No. 81–1074–Civ–J–JHM; Procup v. Watson, et al., Case No. 81–1119–Civ–J–B; Procup v. Strickland, et al., Case No. 81–1157–Civ–J–JHM; Procup v. Strickland, et al., Case No. 81–1249–Civ–J–B; Procup v. Crockett, et al., Case No. 82–120–Civ–J–B; Procup v. Strickland, et al., Case No. 82–438–Civ–J–B; Procup v. Strickland, et al., Case No. 82–447–Civ–J–JHM; Procup v. Wainwright, et al., Case No. 82–457–Civ–J–M; Procup v. Bigham, et al., Case No. 82–459–Civ–J–M; Procup v. Brierton, et al., Case No. 82–462–Civ–J–M; Procup v. Matthis, Case No. 82–482–Civ–J–JHM; Procup v. Bernoski, Case No. 82–484–Civ–J–JHM; Procup v. McFadden, et al., Case No. 82–485–Civ–J–JHM; Procup v. Matthews, et al., Case No. 82–488–Civ–J–JHM; Procup v. Wainwright, et al., Case No. 82–500–Civ–J–B; Procup v. Dugger, et al., Case No. 82–520–Civ–J–B; Procup v. Pepper, Case No. 82–598–Civ–J–B; Procup v. Watson, et al., Case No. 82–652–Civ–J–JHM; Procup v. Walker, Case No. 82–654–Civ–J–M; Procup, et al. v. Watson, et al., Case No. 82–656–Civ–J–M; Procup v. Long, et al., Case No. 82–718–Civ–J–M; Procup v. Watson, et al., Case No. 82–897–Civ–J–M; Procup v. Gutherie, Case No. 82–943–Civ–J–JHM; Procup v. Jewell, et al., Case No. 82–1049–Civ–J–JHM; Procup v. Cooper, Case No. 82–1064–Civ–J–M; Procup v. McClinty, Case No. 82–1065–Civ–J–M; Procup v. Cooper, Case No. 82–1077–Civ–J–M; Procup v. Sands, et al., Case No. 83–125–Civ–J–12; Procup v. Franks, et al., Case No. 83–191–Civ–J–14; Procup v. Mayes, Case No. 83–193–Civ–J–14; Procup v. Barton, Case No. 83–194–Civ–J–14; Procup v. Dugger, et al., Case No. 83–195–Civ–J–12; Procup v. Mixon, Case No. 83–327–Civ–J–16; Procup v. McClinty, et al., Case No. 83–328–Civ–J–16; Procup v. Massey, et al., Case No. 83–329–Civ–J–14; Procup v. Gutherie, Case No. 83–330–Civ–J–16; Procup v. Strickland, et al., Case No. 83–351–Civ–J–14; Procup v. Watson, et al., Case No. 83–381–Civ–J–12.

Additionally, Procup has appealed to the United States Courts of Appeal for the Fifth and Eleventh Circuits on fifteen occasions, complaining of rulings made by various judges within this division. The following is a list of those cases: Procup v. Peppers, 668 F.2d 535 (11th Cir.1982); Procup v. Wainwright, No. 81–9580 (5th Cir.1981); Procup v. Morin, No. 81–9587 (5th Cir.1981); Procup v. Linnehan, No. 81–9668 (11th Cir. 1982); Procup v. Wainwright, No. 81–9669 (11th Cir.1982); Procup v. Rising, No. 81–9664 (11th Cir.1982); Procup v. Harris, No. 81–9585 (5th Cir.1981); Procup v. Wainwright, No. 81–9586 (5th Cir.1981); Procup v. Terry, No. 81–9601 (5th Cir.1981); Procup v. Barlow, No. 81–9592 (5th Cir.1981); Procup v. Frank, No. 81–9607 (5th Cir. 1981); Procup v. Harrington, No. 82–2037 (11th Cir.1982); Procup v. Strickland, No. 82–5684 (11th Cir.1982).

The 176 cases filed by Procup in the Jacksonville Division of the Middle District of Florida, and the fifteen appeals stemming therefrom set forth above, do not comprise the full extent of his litigiousness. The Court's files reveal that Procup has filed suits in various other state and federal courts. For instance, several of his cases have been transferred to the Middle District of Florida from the Northern District of Florida, indicating that Procup has filed civil rights cases in the courts of that District. Additionally, Procup has brought suit in this Court against certain state court clerks, complaining of their treatment of his cases in those courts. Thus, it is apparent that Procup has been active in several courts throughout the state. While this information does not reveal the total number of actions which Procup has brought, his statements made in certain pleadings are of assistance in approximating that number. On October 12, 1981, in Procup v. Watson, et al., Case No. 81–1074–Civ–J–WC, Procup asserted that he had 270 lawsuits pending in "nine judicial jurisdictions." Considering that that statement did not include any cases which Procup filed in either 1982 or 1983, the Court can conserva-

tively estimate that Procup has himself filed in excess of 300 lawsuits within the past few years. Furthermore, that total does not include the cases in which plaintiff has acted as a "law clerk" for various other inmates. On July 1, 1980, in *Procup v. Savage, et al.*, Case No. 80–273–Civ–J–M, Procup indicated that as of that date he had filed forty cases during the year for himself and ten on behalf of other inmates. Assuming that such a ratio has remained remotely similar during the following three years, the number of cases in which Procup has been involved becomes even larger. In any event, there can be little question that Procup is a highly prolific litigator.[5]

■ Despite the fact that Procup has filed such a large number of cases, it is clear that litigiousness alone will not support an injunction restricting his filing activities. *In re Oliver*, 682 F.2d at 446; *Pavilonis v. King*, 626 F.2d 1075, 1079 (1st Cir.), *cert. denied*, 449 U.S. 829, 101 S.Ct. 96, 66 L.Ed.2d 34 (1980). As stated in *In re Oliver*, 682 F.2d at 446, "[a]ccess to the courts is a fundamental tenet of our judicial system; legitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be. Moreover, ... 28 U.S.C. § 1915 ... was enacted specifically to provide poor persons with equal access to the federal courts." However, "no one, rich or poor, is entitled to abuse the judicial process." *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975). Accordingly,

the Court will fully review Procup's extensive record of litigation in this division to ascertain whether he has, in fact, abused the judicial process.

## II. ABUSE OF THE JUDICIAL PROCESS

### 1. *Frivolous Nature of Procup's Claims*

■ The cases filed by Procup in this Court share one common element—they lack merit. Procup has yet to prevail on the merits of any of the 176 cases that he has filed in the Middle District of Florida. None has reached the stage where a trial on the merits was called for. Procup has fared equally poorly on appeal. In the fifteen cases in which he has sought a reversal of the decisions of the courts of this division, Procup has achieved no success. In fact, in at least seven of Procup's appeals the appellate courts have disposed of the claim by denying him leave to appeal *in forma pauperis*.[6]

In addition to Procup's lack of success at the trial and appellate levels, an examination of the docket sheets of the cases brought by Procup lends support to the notion that his claims are frivolous. While filing 176 cases in this division, Procup has named 126 different individuals as defendants in those cases. Among those included are Magistrates of this Court, numerous Assistant Attorneys General of the State of

---

**5.** To put the magnitude of Procup's litigiousness in some form of perspective, the Court notes that according to the Florida Senate's Committee on Corrections, Probation & Parole, there were 17,935 inmates incarcerated in the various state penal institutions geographically located within the Middle District of Florida as of June 30, 1982. During the twelve-month period ending on September 30, 1982, those state inmates filed 979 civil rights cases in this district. *Federal Judicial Workload Statistics for the Twelve Month Period Ended September 30, 1982.* (The 979 cases filed in this district represented the second largest number of prisoner civil rights cases filed in any judicial district in the country.)

By dividing the 979 cases filed into the 17,935 inmates within the district, the Court finds that the average inmate in this district filed, even including Procup's filings for the period, approximately 0.054 cases during the year. By contrast, over the past four years Procup has filed an average of 45.25 cases per year in the Jacksonville Division alone. Thus, based solely upon his filings within this division, Procup tends to file civil rights cases roughly 900 times as often as the average inmate incarcerated in a state penal institution located within the Middle District of Florida did in the past year.

**6.** Those cases are: *Procup v. Wainwright, et al.*, No. 81–9580 (5th Cir.1981); *Procup v. Morin*, No. 81–9587 (5th Cir.1981) (Unit B); *Procup v. Harris*, No. 81–9585 (5th Cir.1981) (Unit B); *Procup v. Wainwright*, No. 81–9586 (5th Cir.1981) (Unit B); *Procup v. Terry, et al.*, No. 81–9601 (5th Cir.1981) (Unit B); *Procup v. Barlow*, No. 81–9592 (5th Cir.1981) (Unit B); and *Procup v. Frank*, No. 81–9607 (5th Cir.1981) (Unit B).

Florida, Clerks of Court of this Court and many state courts, Staff Attorneys of this Court, elected state officials, officers of the Florida Parole and Probation Commission, and, as expected, officers and employees of the Florida Department of Corrections. This figure does not include the numerous claims brought by Procup in which he listed defendants only by description. Especially in light of the other indicia of the frivolity of Procup's claims discussed herein, the breadth of defendants named in Procup's cases appears to demonstrate Procup's propensity to name as a defendant virtually anyone with whom he comes into contact, regardless whether he has a legally cognizable claim against such a person.

Furthermore, a perusal of certain cases filed by Procup confirms that a significant portion of his claims are patently frivolous. For example, in *Procup v. Deering,* Case No. 80–907–Civ–J–WC, the substance of Procup's complaint under section 1983 was that a corrections officer had denied him sugar for his coffee and cereal. In *Procup v. Workman,* Case No. 80–888–Civ–J–M, Procup's complaint was again addressed to the food served at the institution. Procup alleged that he was limited at breakfast to one ounce of juice per day, one roll instead of two, one box of cereal instead of two, that he was not served sugar with his meal, and that he was forced to eat from a paper plate rather than from a tray. For these alleged violations of his constitutional rights, Procup demanded $120,000 in compensatory damages and a like amount in punitive damages. Procup also complained about lunch in that same complaint. He asserted that he was denied his right to a salad, that he received a diabetic rather than a regular dessert, and that he was again forced to eat from a paper plate instead of a tray. For these deprivations he demanded $80,000 in compensatory damages and an equal amount in punitive damages. That same complaint also included Procup's unhappiness with dinner. He asserted that he was again forced to eat from a paper plate, that he was given only one vegetable instead of two, and that he was given only one slice of bread. For this he asked $50,000 in compensatory damages and $50,000 in punitive damages. Both Case No. 80–897–Civ–J–WC and Case No. 80–888–Civ–J–M were, of course, dismissed.

Other examples can be found which typify the large number of patently frivolous cases filed by Procup. In *Procup v. Bigham, et al.,* Case No. 82–459–Civ–J–M, Procup complained that he had been punished by employees of the institution for filing his numerous lawsuits. The form of that punishment, according to Procup, was that he had been denied a plastic drinking glass, making it necessary for him to drink from a used milk carton. In *Procup v. Cooper,* Case No. 82–1064–Civ–J–M, Procup alleged that he was forced to walk from his cell to the front door of his wing without one shoe; as a result, he now suffers from athlete's foot. In *Procup v. Gutherie,* Case No. 82–943–Civ–J–M, Procup complained that he was not issued three tee-shirts and a pair of shoes. In *Procup v. Strickland, et al.,* Case No. 81–1119–Civ–J–B, Procup maintained that he had been deprived of thirty spoonfuls of coffee and requested relief in the amount of $60,004.20.

In both *Procup v. Harrington,* Case No. 80–390–Civ–J–M, and *Procup v. Pepper,* Case No. 80–804–Civ–J–B, Procup complained that he was not given a brush with which to clean his commode, but was instead required to clean it with a rag. As a result, Procup claimed that he suffered a staph infection on his hand. In *Procup v. Strickland,* Case No. 80–906–Civ–J–WC, Procup asserted that defendants would not repair the window in his cell. Procup complained that he would get wet when it rained. As a result, he caught a cold. For this alleged deprivation of his constitutional rights, Procup demanded relief in the amount of $420,000. In *Procup v. Deering,* Case No. 80–907–Civ–J–WC, Procup complained that he was denied three bags of sugar per day for his coffee and cereal and requested monetary damages in the amount of $120,000. Finally, in *Procup v. Dugger, et al.,* Case No. 80–934–Civ–J–WC, Procup objected because defendants would not furnish him a television for his cell. While

further examples could be set forth, the Court finds the foregoing sufficient to illustrate the point that many of the cases filed by Procup are, on their face, of little substance.

Moreover, even those complaints which arguably state claims for relief collapse upon a closer examination of the case. For instance, in *Procup v. Turner, et al.,* Case No. 80–646–Civ–J–B, Procup alleged that various prison officials, an Assistant Attorney General, and the Governor of the State of Florida conspired to effect his murder and to cover up the murder of another inmate. The Honorable Howell W. Melton conscientiously ordered a special investigation and report into the matters asserted by Procup. The investigation and report uncovered nothing to support Procup's serious assertions and Procup eventually voluntarily dismissed the action. Similarly, in *Procup v. Bigham, et al.,* Case No. 80–642–Civ–J–M, Procup asserted that his legal files had wrongfully been destroyed by an agent of the Department of Corrections who was disguised as a fire marshal. A United States Magistrate conducted an emergency evidentiary hearing on the matter. He found that, a legitimate fire marshal had conducted the inspection, determined that Procup's cell contained too much combustible material, and permitted Procup to dispose of certain material. Procup chose the material in question. Numerous other times, the Court has attempted to schedule Procup's cases for trial, only to have him balk for a variety of reasons.

Procup's settlement demands offer a final example of the frivolity of his claims as well as the lack of good faith in which he prosecutes them. The Court is aware that it is not unusual for a party to a lawsuit to tend to overvalue the worth of his claim. However, Procup's dialogues with the Office of the Attorney General, which Procup has filed with the Court, serve not only to further illustrate the lack of substance to his lawsuits, but also to suggest an attitude of contempt for the judicial process. For example, in *Procup v. Strickland, et al.,* Case No. 80–1085–Civ–J–B, wherein Procup complained of the wrongful seizure of his radio and tennis shoes, he demanded, in exchange for his dismissal of the case, 300 days of good-time credit, defendants' payment of all costs and fees in the case, a two-year line of credit at the prison canteen, and $420,000. On another occasion, Procup attempted to settle his claim that he had been deprived of his mirror. He valued it at $1 and claimed that he had not had the use of it for approximately 900 days. In order to settle the case, Procup requested approximately $900, his transfer to another place of incarceration, his appointment to the position of trustee, the transfer of various other inmates, and the authority to dictate which correctional personnel would be assigned to his new place of incarceration.

From the foregoing discussion, the Court finds that Procup has repeatedly filed frivolous litigation in this division.

### 2. *Repetitive Cases*

Not only has Procup's litigation been frivolous in substance, it has also been marked by a frequency of repetitive claims. To illustrate, the judges of this division have previously determined that Procup's allegations in *Procup v. Harris,* Case No. 81–265–Civ–J–B, were identical to those made in *Procup v. Harris,* Case No. 80–908–Civ–J–M; that *Procup v. Andrews,* Case No. 81–324–Civ–J–B, is repetitive of *Procup v. Anderson, et al.,* Case No. 81–43–Civ–J–B; that *Procup v. Anderson, et al.,* Case No. 80–393–Civ–J–M, *Procup v. Anderson, et al.,* Case No. 80–412–Civ–J–M, *Procup v. Anderson, et al.,* Case No. 80–413–J–M, *Procup v. Anderson, et al.,* Case No. 80–439–Civ–J–M, *Procup v. Anderson, et al.,* Case No. 80–559–Civ–J–M, *Procup v. Anderson, et al.,* Case No. 80–582–Civ–J–M, *Procup v. Anderson, et al.,* Case No. 80–593–Civ–J–M, *Procup v. Anderson, et al.,* Case No. 80–611–Civ–J–M, *Procup v. Harrington, et al.,* Case No. 80–679–Civ–J–M, and *Procup v. Anderson, et al.,* Case No. 80–680–Civ–J–M, represent repetitive filings; and that *Procup v. Dugger,* Case No. 80–826–Civ–J–WC, and *Procup v. Dugger,* Case No. 80–818–Civ–J–WC, make similar

allegations. Again, the above-listed cases serve only as an example of the nature of the problem created by Procup. The listed cases are merely ones in which the repetitive nature of Procup's cases was so pervasive or glaring as to cause a court order to issue. In general, Procup advances approximately five or six different types of claims in which only the names of the alleged wrongdoers and the dates on which the wrong was supposedly perpetrated have been changed. Although many of Procup's cases have been consolidated, this tactic makes it difficult for the Court to effectuate wholesale consolidations of his cases. Nonetheless, there can be no question that Procup frequently files repetitive claims.

3. *Other Indications of Abusiveness*

In addition to the fact that his cases are frivolous and repetitive, Procup has abused the judicial process in other ways. One such form of that abuse is his refusal to comply with certain rules and procedures of the Court. Despite the explicit instructions on the face of the section 1983 forms provided to inmates and the repeated warnings by the Court that he is only to write on one side of the page, Procup insists upon using both sides of the paper. *See, e.g., Procup v. Strickland, et al.,* Case No. 81–1119–Civ–J–B; *Procup v. Savage, et al.,* Case No. 80–273–Civ–J–M (cases in which the Court highlighted the rule that pleadings should be only on one side of page, noted Procup's frequent violation thereof, and warned him to cease such behavior).

A related and more disturbing practice is Procup's propensity to submit pleadings to the Court which are scrawled on toilet paper. Although the Court has sternly admonished Procup to refrain from further engaging in such a practice and has returned pleadings written on toilet tissue, Procup has continued to submit such pleadings. While most of those submissions have been immediately returned to Procup, some still remain in the Court's files. *See, e.g., Procup v. Linnehan, et al.,* Case No. 81–519–Civ–J–B; *Procup v. Graham,* Case No. 81–316–Civ–J–WC; *Procup v. Savage, et al.,* 80–273–Civ–J–M; *Procup v. Brierton,* Case No. 79–828–Civ–J–M.

Procup also abuses the discovery process. Much of what he requests during discovery is excessive, irrelevant, and requested in bad faith. For instance, in *Procup v. Anderson, et al.,* Case No. 80–393–Civ–J–M, Procup complained that his mail had been seized. As a portion of his requested discovery, he asked to take the written depositions of the President of the United States, United States Senator Edward Kennedy, Federal Bureau of Investigation Director William Webster, Central Intelligence Agency Director Stansfield Turner, the Chairman of the Joint Chiefs of Staff, the Director of Interpol, and the senior partners of the Law Offices of Donovan, Leisure, Newton & Ervine. In reviewing such requests, it is difficult for the Court to find that they were submitted in a good faith attempt to probe the constitutional violations allegedly suffered by Procup.

Not only does Procup file numerous cases, he fills those cases with lengthy, rambling pleadings. On at least one occasion United States Magistrate Harvey E. Schlesinger refused to issue an order of process for a claim submitted by Procup, finding the complaint to consist of "unintelligible and disjointed" allegations. *See Procup v. Anderson, et al.,* Case No. 80–803–Civ–J–B. Moreover, Procup has frequently submitted virtually indiscernible pleadings approaching and exceeding one hundred pages in length. Ironically, one of Procup's principal complaints is that he is not provided sufficient paper with which to prosecute his cases. To that end, he filed ten consecutive "notices" to the Court in *Procup v. Pepper,* Case No. 79–665–Civ–J–M, and thirteen consecutive "notices" in *Procup v. Brierton,* Case No. 79–828–Civ–J–M, complaining that he had insufficient paper with which to work.

The Court also takes exception to Procup's practice of mailing "exhibits" to the Court along with his pleadings. For instance, in *Procup v. Workman, et al.,* Case No. 80–278–Civ–J–M, Procup sent to the Court several pieces of rancid animal fat,

which he had purportedly excised from his meals of the past week.

The above-described examples reflect merely a portion of the nearly innumerable acts of Procup designed to abuse and frustrate the system. When coupled with the volume and frivolity of the cases he has generated, these instances of abuse take on even greater significance.

### 4. *Motivation*

Perhaps the most disturbing facet of Procup's assault upon the judicial process of this division is his apparent motivation for so doing. From the foregoing, it appears that Procup derives some degree of satisfaction from "toying" with the federal judiciary. Furthermore, and of even greater significance, Procup seems to have commenced and continued his barrage in an attempt to intimidate and coerce officers of the Department of Corrections in order to obtain more favorable treatment.

Documentation exists to support the latter conclusion. In early 1980, Procup addressed a letter to a high prison official, warning him that he would start filing a case every day that a notary came to his cell unless he "started getting things [his] own way." Later, Procup wrote a second similar letter and posted it on the classification aisle in the institution. That letter indicated that beginning the following week he planned to file a lawsuit every weekday. The existence and content of these letters was confirmed by Procup in a deposition given by him in *Procup v. Turner, et al.,* Case No. 80–646–Civ–J–B.

On another occasion, Procup attempted to derive personal benefit from a slightly different misuse of the judicial system. On August 29, 1979, Procup wrote a letter to the Inmate Grievance Administrator of the Department of Corrections, in which he offered to make a deal in order to gain a transfer and more favorable treatment for himself. Under the terms of Procup's proposal, he was to "sell out" the various inmates whom he was assisting in the prosecution of their civil rights cases. Procup offered to place "technical error" in each of about twenty-five cases so that dismissal would be required and so that reversal on appeal would be impossible. Thus, the Department would be rid of twenty-five lawsuits brought by inmates in exchange for giving Procup what he desired. The documentation necessary to support these findings can be found in *State of Florida, et al. v. Procup,* Case No. 79–1149–Civ–J–WC.

In still another instance, Procup attempted to gain his release from prison by blackmail. He informed the Department of Corrections that he had delivered two envelopes to an employee of the Department. Those envelopes allegedly contained affidavits from prison employees attesting to various attacks on inmates and thefts of inmates' property by prison employees. Procup informed the Department of Corrections that the envelopes were addressed to the United States Attorney and to a member of the media. According to Procup, if the employee did not hear to the contrary from Procup before a certain date, he would deliver those envelopes. Procup then offered to "exchange the freedom of the employees [sic] names in these affidavits, for my own." He requested an immediate parole to Fairfax County in Virginia. This attempt by Procup to extort his freedom was revealed in *State of Florida, et al. v. Procup,* Case No. 79–1149–Civ–J–WC.

Procup's vindictive, threatening nature became apparent in two other cases as well. After the Court's staff attorney returned the rancid animal fat to Procup in Case No. 80–278–Civ–M, Procup immediately filed suit against the staff attorney. That case, *Procup v. Dugger, et al.,* Case No. 80–633–Civ–J–M, was found by Judge Melton to be retaliatory and without merit. Furthermore, in *Procup v. Bigham, et al.,* Case No. 80–642–Civ–J–M, following the Court's denial of one of his numerous motions in the case, Procup filed his "Intent to File Additional Litigation Against Judiciary." In that document, Procup threatened the members of the judiciary of this division with litigation against them in their personal capacity in the event that further unfavorable rulings were rendered.

Thus, it is apparent to the Court that Procup has initiated and prosecuted his massive caseload for improper purposes.

5. *Previous Findings of the Court and Warnings to Curb Abuse*

The Court's displeasure over Procup's misuse of the judicial system set forth herein should come as no surprise to him. On repeated occasions Procup has been warned and admonished by various judges of this division concerning his numerous abuses of the court system. To illustrate, on June 10, 1981, in *Procup v. Linnehan, et al.,* Case No. 81–317–Civ–J–B, the undersigned found that many of Procup's cases were repetitive and frivolous in nature, informed him that the Court was not powerless in that regard, and warned him to desist from participating in similar litigation in the future. On May 15, 1981, in *Procup v. Terry, et al.,* Case No. 81–326–Civ–J–WC, the Honorable William J. Castagna made similar findings and issued Procup an equally stern warning.

Likewise, on July 24, 1980, in *Procup v. Anderson, et al.,* Case No. 80–393–Civ–J–M, Judge Melton found that Procup had filed nine cases addressing the same alleged wrong. Judge Melton noted that Procup is a most prolific litigator, that he is engaging in a pattern of repetitive litigation, and that Procup is effectively overwhelming the judicial machinery. In a similar vein, on August 18, 1982, Judge Melton specifically found Procup to be engaged in "sham litigation" in *Procup v. Watson,* Case No. 81–302–Civ–J–M, and dismissed the action.

Furthermore, in *State of Florida, et al. v. Procup,* Case No. 79–1149–Civ–J–WC, the case in which Procup made the offer to betray the inmates whom he was assisting, Procup faced the very consequences now confronting him herein. After receiving that offer from Procup, the Attorney General brought suit against Procup, asking that he be permanently enjoined from filing any further actions in this Court. The state cited both Procup's offer to betray inmates and his threat of blackmail in arguing that he had abused the judicial process. A hearing was held before Judge Castagna, but the state elected to dismiss the suit without prejudice before a ruling was issued on the question of permanent injunctive relief. Nonetheless, the action served to give Procup notice that the Court could enjoin an abusive litigant. Up to that point, Procup had filed roughly twelve cases in this Court. However, almost coincident with the dismissal of Case No. 79–1149–Civ–J–WC, Procup began his barrage of filings that has continued through this date. Thus, the aborted attempt to enjoin Procup's filings did not cause him to proceed more cautiously and selectively. It appears instead to have had the opposite effect.

Finally, on May 6, 1983, the Court gave Procup the opportunity to demonstrate why he should not be enjoined from filing further pleadings in this district, due to his apparent abuse. In his thirty-six page response, Procup basically denied any wrongdoing and accused the Court of treating him unfairly. In fact, even after the Court's order of May 6, 1983, Procup has continued his considerable litigious activities.[7]

6. *Conclusion*

In spite of numerous warnings, including previously being haled before the Court to face the possibility of being enjoined from further access to the courts, Procup has persisted in his practice of filing the frivolous and repetitive actions detailed above, and of paying little heed to judicial procedures of which he is well aware. Therefore, the Court finds that Procup has engaged and continues to engage in a gross abuse of the judicial process. Given this, the Court turns to a discussion of the available sanctions.[8]

---

**7.** On May 24, 1983, Procup filed his one hundred seventy-sixth case in this Court—*Procup v. Watson, et al.,* Case No. 83–381–Civ–J–12. Additionally, Procup has continued to file his voluminous, rambling pleadings on a very frequent basis in his other pending cases.

**8.** In the recent case of *Green v. Warden, U.S. Penitentiary,* 699 F.2d 364, 368 (7th Cir.1983),

## III. SANCTIONS

As noted above, the All Writs Act confers a broad grant of supervisory authority to the federal courts. Such authority encompasses the issuance of injunctive measures restricting an abusive litigant's access to the courts. While a person's right of access to the courts is not absolute or unconditional, *In re Green,* 669 F.2d 779, 785 (D.C.Cir. 1981), there can be little doubt that such a right is fundamental to our system of justice and should not be lightly regarded. With this in mind, the Court will give consideration to the nature and extent of the injunction necessary to terminate Procup's abusive practices in this division.

Various federal courts have encountered abusive litigants and have entered injunctions designed to end that abuse. The most common situation appears to be one in which a litigant, perhaps unsatisfied with the original outcome, persists in filing claims similar or identical to the one previously adjudicated. Courts faced with such a situation have found the interests of finality of judgment, protection of defendants from continued harassment, and concern for maintaining order in the court's dockets to be sufficient to warrant an injunction against the continued relitigation of such claims. *See, e.g., Lacks v. Fahmi,* 623 F.2d 254 (2d Cir.1980) (per curiam); *Harrelson v. United States,* 613 F.2d 114 (5th Cir.1980) (per curiam) ("district court

has the power under 28 U.S.C. § 1651(a) to enjoin litigants who are abusing the court system by harassing their opponents"). While supporting the principle that injunctive measures are available to a court in order to curb the practices of an abusive litigant, neither *Lacks* nor *Harrelson* involved the large-scale abuse encountered herein, whereby hundreds of defendants are named in a variety of different factual scenarios.

Other courts have encountered litigants engaged in the type of abuse more akin to the style demonstrated by Procup. In *Green v. Camper,* 477 F.Supp. 758 (W.D.Mo. 1979), the court considered the extent of judicial havoc created by inmate Clovis Carl Green, Jr.[9] Upon exhaustively recounting Green's extensive record of abuse, the court found that Green had, in fact, abused the judicial process. After making that finding, the court turned to the matter of determining an appropriate and effective sanction. The court then withdrew Green's leave to proceed *in forma pauperis* in the case before it, dismissed that case, and entered an order requiring a United States Magistrate to screen all further filings submitted by Green to determine whether the filing was in furtherance of his bad faith effort to deluge the courts.

In *Green v. White,* 616 F.2d 1054 (8th Cir.1980), the Eighth Circuit addressed

---

the court characterized the need to impose sanctions against an abusive litigant as follows:

[The litigant's] track record both here and in other circuits is clearly one of blatant abuse of the courts. His harassment of the district court, as evidenced by the procedural history in this case, and his recent flurry of frivolous appeals to this Court, inevitably result in delayed justice for other litigants in our system, increasingly congested calendars, and valuable time being wasted and lost as courts dispose of [the litigant's] ubiquitous lawsuits. The basis for the requested injunction, however, is not the impact [the litigant's] multitude of lawsuits have [sic] had upon the federal judicial system. Rather, the requested injunction is necessary in light of the utterly frivolous and often malicious nature of [the litigant's] pleadings and causes of actions. It is inconceivable to us that a court must subject itself to the type of attack which [the litigant] has mounted upon the

federal judiciary without being able to say at some point that "enough is enough."

Such is the case in the matter now pending before this Court.

**9.** Other cases referred to in this Opinion, *infra,* deal with Mr. Green's propensity to abuse the judicial system. Referred to by one court as the "most prolific prisoner litigant in recorded history," *In re Green,* 669 F.2d at 781, Green has apparently filed between 600 and 700 complaints in federal and state courts during the past ten years. Procup appears to be at least equaling Green's torrid pace. As noted earlier, Procup, conservatively speaking, has filed in excess of 300 lawsuits in various federal and state courts throughout Florida in the past four and one-half years. Furthermore, Procup's abusive practices and his motivation for doing so are not entirely dissimilar to those of Green. *See Green v. Camper,* 477 F.Supp. at 769–772.

Green's abusive practices. The district court had previously enjoined its clerk from accepting any filing—writ, petition, complaint, or motion—from Green which was not accompanied by the prepayment of the court's filing fee. The district court also required Green to verify the originality of each pleading and to send a copy of the pleading to the Chief Judge of the District. The Eighth Circuit took judicial notice of Green's abuse of the judicial process, but modified the district court's injunction. The Eighth Circuit noted its desire to "severely limit the circumstances under which future applications by [Green] for in forma pauperis status under 28 U.S.C. § 1915 will be entertained by the courts of this circuit." *Id.* at 1055. The court then held that the courts of the circuit were to refuse to accept for filing any of Green's pleadings accompanied by a request to proceed *in forma pauperis* unless the claim specifically alleged a "constitutional deprivation by reason of physical harm or threats thereof to [Green's] person." *Id.* Where such allegations were made, the case was to be docketed and reviewed in the usual manner pursuant to section 1915.

In *In re Clovis C. Green, Jr.,* No. 81–1186 (5th Cir. April 27, 1981), published as an Appendix in *Green v. Carlson,* 649 F.2d 285 (5th Cir.), *cert. denied,* 454 U.S. 1087, 102 S.Ct. 646, 70 L.Ed.2d 623 (1981), the court noted Green's lengthy history of abuse throughout the country. The Fifth Circuit reaffirmed the notion that no one, whether rich or poor, is entitled to abuse the judicial process. The court also noted that such flagrant abuse as demonstrated by Green can enable one person to preempt use of judicial time that could be used to consider the claims of others. The Fifth Circuit then approved a sanction similar to the one established by the Eighth Circuit in *Green v. White,* enjoining the Clerk of the circuit from accepting any further pleadings from Green which requested leave to proceed *in forma pauperis* unless Green specifically alleged a constitutional deprivation by reason of physical harm or threats to his person. The court also stated that the district court

could establish the same provision with respect to Green.

The District of Columbia Circuit next considered Green's abusive practices. In *In re Green,* 669 F.2d 779 (D.C.Cir.1981), the court again agreed with earlier decisions finding that Green had engaged in a continuing abuse of the judicial process. However, the court vacated the district court's order suspending operation of section 1915(a) and requiring Green to pay a $100.00 filing fee in each action. Instead, the District of Columbia Circuit directed the district court to enter an order providing that Green be prohibited from filing any further actions without leave of court. In seeking leave, Green was required to certify that the claims presented had never been disposed of on the merits. Under the terms of the order structured by the District of Columbia Circuit, Green's failure to so certify or his certification of false information would expose him to contempt of court charges.

The Third Circuit recently addressed problems of inmates abusing the judicial system in *In re Oliver,* 682 F.2d 443 (3d Cir.1982). There, the inmate had filed fifty-one civil rights and habeas suits in the past thirteen years. None had proven meritorious. The district court, *sua sponte* and without notice, found that the inmate had abused the judicial process. The district court then enjoined the clerk from accepting any further cases from the inmate, absent court approval. On appeal, the Third Circuit found that "a continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the court." *Id.* at 446. The court also found that the case before it appeared sufficient to support such an order. However, the Third Circuit concluded that the inmate should have been given notice of the impending action and should have been afforded the opportunity to have his position placed in the record. The court

remanded the case so that that could be accomplished.[10]

The Seventh Circuit also addressed the topic in *Green v. Warden, U.S. Penitentiary,* 699 F.2d 364 (7th Cir.1983). Concluding, as did the above-listed courts, that Green had abused the judicial process, the Seventh Circuit adopted an approach much like that of the District of Columbia Circuit, requiring that Green accompany any new action with a certificate stating that the matter was original and had never been disposed of on the merits. Green's failure would subject him to punishment for contempt of court.

Finally, the First Circuit has considered the matter of prohibiting abusive litigants from filing further actions in *Gordon v. U.S. Dept. of Justice,* 558 F.2d 618 (1st Cir.1977). After the litigant, a non-inmate, filed a series of vituperative attacks upon a large number of federal judges within the First Circuit and on the United States Supreme Court for ruling against him, the district court entered an order enjoining the litigant from filing or prosecuting, without prior leave of court, "any other legal proceeding in any court against any state or federal judge, officer or employee for actions taken in the course of their official duties...." *Id.* The First Circuit affirmed, finding it proper and necessary for an injunction to issue barring a party from filing and processing frivolous and vexatious suits. In support, the court noted the earlier decision of *Rudnicki v. McCormack,* 210 F.Supp. 905 (D.Mass. and D.R.I.1962), *appeal dismissed sub nom. Rudnicki v. Cox,* 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963), wherein a similar injunction was issued.

Having set forth the various approaches previously taken by other courts to prevent an abusive litigant from perpetuating that abuse, the Court will consider their possible application to the case at bar.

The form of injunction sanctioned by the District of Columbia and Seventh Circuits in dealing with Mr. Green—requiring that he certify the claim's originality subject to punishment for contempt of court—appears to this Court to be the least effective method of dealing with Procup. Unlike Green,[11] Procup is presently serving a term of life imprisonment. The threat of receiving additional periods of incarceration for being held in contempt of court does not appear likely to deter Procup from his abusive practices.[12] In attempting to fashion a sanction designed to repel a direct attack upon the judicial system, the Court should not be forced to employ an ineffectual remedy.

Likewise, the approach taken by the Fifth and Eighth Circuits in dealing with Green—allowing Green to file suit *in forma pauperis* only if he alleges a constitutional deprivation stemming from physical injury—does not appear to be a wholly satisfactory method of curbing Procup's abuse. While such an order would curtail Procup's complaints concerning the living conditions of his confinement, the Court is concerned that it would merely ensure that Procup's future allegations included a claim of physical harm to his person. Although the Court has no information concerning the effectiveness of the Fifth and Eighth Circuits' attempts to curb Green's abuse, the Court is not persuaded that such an injunction

**10.** In the instant case, Procup was put on notice by means of the Court's Order to Show Cause, entered herein on May 6, 1983. Procup was given thirty days in which to make his position known to the Court.

**11.** Green was sentenced to a ten-year term of imprisonment in 1975, for rape. However, he became eligible for parole at an earlier date, completing his sentence in 1980. Green would be a free man today were it not for the several sentences imposed by the district court for the Western District of Missouri for contempt of

court convictions. Thus, Green has felt and continues to feel the effects of such a sanction.

**12.** While Procup may eventually become eligible for parole, he is, under Florida law, ineligible for such consideration until he has actually served twenty-five years in prison. Since Procup is approximately seventeen years away from even being considered for parole, the deterrent effect of the threat of a contempt of court conviction appears to the Court to be minimal at best.

would cause Procup to cease his abuse of the judicial system.[13]

The approach taken by the First and Third Circuits and by the Western District of Missouri in dealing with Green—prohibiting him from filing any further pleadings of any sort without leave of court—could possibly be effective in preventing Procup from engaging in further abuse of the judicial process. Unless Procup convinced the Court that his complaint was meritorious, he would be barred from prosecuting any further actions. Upon closer examination, however, such a sanction does not appear likely to alter significantly the present situation. The Court would, in all likelihood, continue to be deluged by Procup's frivolous filings; they would merely be accompanied by his requests to obtain the Court's permission to proceed with his cases. Those requests would necessitate repeated preliminary reviews similar in form to those presently given. Therefore, in substance, the Court would not have effectively curtailed Procup's abusive filing practices.

Despite the drawbacks that each of the foregoing sanctions would present in dealing with Procup, the Court can envision an injunctive measure which it believes will end Procup's abuse of the system. Upon consideration of the legal precedent and the form of sanctions previously imposed, as well as careful reflection upon the nature of Procup's abuse of the judicial system, the Court will enjoin the Clerk of Court from filing any additional cases or pleadings therein submitted by Procup while proceeding *pro se*. The Court will permit the Clerk to accept such new cases or pleadings therein only if filed by an attorney acting on behalf of Procup.

This injunctive measure is reasonable and workable. Virtually every action filed by Procup herein has been brought pursuant to 42 U.S.C. § 1983. Because 42 U.S.C. § 1988[14] provides for the award of attorney's fees as part of the permissible recovery by a prevailing party under section 1983, there is ample incentive for members of the increasingly large private bar to handle a claim which appears to be meritorious. In determining whether a case appears to be meritorious, an attorney may properly utilize various investigative techniques, whereas that option is not available to the Court. Moreover, the Florida Institutional Legal Services, Inc. (formerly known as the "Prison Project") is available to Procup. That organization provides legal assistance to indigent inmates incarcerated at Union Correctional Institution, Florida State Prison, and Florida Correctional Institution (Women's Unit), in matters including collateral attacks on convictions, civil rights actions under section 1983, and various other types of cases.[15]

13. In fact, Procup seems to be quite adept at finding ways to state a claim for relief. Once he finds one that withstands the Court's preliminary scrutiny under section 1915(d), he tends to repeat the allegation by merely changing the dates and the names of the defendants allegedly involved. This proposal would be an open invitation for Procup to proceed apace with his abuse of the system by including the "magic" allegation of physical injury to his person.

14. The pertinent portion of 42 U.S.C. § 1988 provides as follows:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title XI of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee as part of the costs.

Moreover, the district court's discretion in deciding whether to award attorney's fees to the prevailing party is narrowly limited. In fact, "[a] party seeking to enforce the rights protected by the[se] statutes, ... if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Brown v. Culpepper,* 559 F.2d 274, 277 (5th Cir.1977), *quoting,* S.Rep. No. 1011, 94th Cong.2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5912; *see also Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968); *Bonnes v. Long,* 599 F.2d 1316, 1318 (4th Cir.1979), *cert. denied,* 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982).

15. Florida Institutional Legal Services, Inc. evolved from what was known as the "Prison Project" of Florida Legal Services, Inc., a non-profit corporation organized in 1973 to provide

Since Procup is and has been incarcerated at institutions within the scope of this service, he would be eligible for representation were he able to convince the legal staff that his claim should be processed. Thus, Procup need pursue to fruition only one of the two above-described avenues in order to have future complaints of constitutional violations brought before the Court. At the same time, however, the attorney's duties under Rule 11, F.R.Civ.P. and the Code of Ethics—to file suit only where there are good grounds to support the pleading—will serve as an invaluable preliminary screening mechanism which will shield the Court from Procup's well-documented proclivity to barrage the Court with frivolous and ill-conceived lawsuits.

By structuring this form of sanction, the Court expects to curtail Procup's blatant abuse of the judicial process, yet not foreclose his right to obtain redress from the Court in an appropriate case. In so doing, the Court also believes that it has remained consistent with the limited Fifth Circuit precedent set forth above.[16] Additionally, the Court will be ensured that claims brought before it on behalf of Procup have been conscientiously scrutinized before being filed. This has obviously not occurred in the past.[17] Finally, the Court wishes to

legal assistance to indigent citizens of the state of Florida. Subsequently, the objectives of Florida Legal Services, Inc. shifted away from direct delivery of legal services to indigents, leaving the Prison Project as the only branch of Florida Legal Services; Inc. that continued to provide direct client services. These changes ultimately led to the transformation of the Prison Project into an independent corporate entity now known as Florida Institutional Legal Services, Inc. *Hooks v. Wainwright,* 536 F.Supp. 1330, 1334 n. 9 (M.D.Fla.1982); Belz, *Legal Services for Florida's Inmates: Expanding Access to the Courts by Hooks and Bounds,* 56 Fla. Bar J. 183 (1982).

In *Hooks,* the Honorable Charles R. Scott spoke highly of the quality of work performed by Florida Institutional Legal Services, Inc. and found that if all prisoners throughout the state of Florida had access to legal assistance such as that provided by Florida Institutional Legal Services, Inc., then prisoners' rights to meaningful access to the courts would be a reality. Additionally, the undersigned is aware of civil rights suits brought in this division on behalf of inmates by Florida Institutional Legal Services, Inc. In fact, that organization has successfully represented an inmate in a section 1983 action brought in this Court. *See Leggett v. Badger, et al.,* Case No. 79–1068–Civ–J–B (jury verdict of $1,500 compensatory damages and $25,000 punitive damages).

**16.** In *In re Clovis C. Green, Jr.,* No. 81–1186 (5th Cir. April 27, 1981), published as an Appendix in *Green v. Carlson,* 649 F.2d 285 (5th Cir.), *cert. denied,* 454 U.S. 1087, 102 S.Ct. 646, 70 L.Ed.2d 623 (1981), previously cited above, the Fifth Circuit implicitly held that a district court may place conditions upon an abusive litigant's future use of the judicial system. By restricting the litigant's right to proceed *in forma pauperis* to actions in which he alleges physical harm to his person, the Fifth Circuit apparently attempted to impose the least severe, effective sanction possible. Here, the Court has followed the same procedure, but has settled upon a different sanction due to its finding that the sanction utilized by the Fifth Circuit in *Green* would not likely be effective against Procup. (*Green* is binding precedent on this Court as the Eleventh Circuit, in the en banc decision of *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), has adopted as precedent the decisions of the former Fifth Circuit, decided prior to October 1, 1981.)

**17.** As the court noted in *Braden v. Estelle,* 428 F.Supp. 595, 597 (S.D.Tex.1977):

A potential plaintiff typically will weigh the chance of success against the cost of pursuing his action and assess realistically whether the possible benefits outweigh the predictable costs. In the absence of a cost requirement, however, a prisoner plaintiff need not confront that dilemma.

Furthermore, as stated in *Jones v. Bales,* 58 F.R.D. 453, 463 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973) (per curiam):

Persons proceeding in forma pauperis are immune from imposition of costs if they are unsuccessful; and because of their poverty, they are practically immune from later tort actions for "malicious prosecution" or abuse of process. Thus, indigents, unlike other litigants, approach the courts in a context where they have nothing to lose and everything to gain. The temptation to file complaints that contain facts which cannot be proved is obviously stronger in such a situation. For convicted prisoners with idle time and free paper, ink, law books, and mailing privileges the temptation is especially strong.

Procup has obviously been unable to resist the temptations detailed above. While the Court cannot create a situation in which Procup will be forced to confront the concerns of a private litigant in determining whether to file suit, the Court is convinced that the form of

emphasize to Procup in the strongest possible terms that if he attempts in any way to continue his abuse of the judicial process, the Court will not hesitate to impose further, more severe sanctions. Given this, the Court will impose the above-described restrictions upon Procup.[18]

## IV. SUMMARY

The Court has found that plaintiff Robert Procup has engaged in a gross abuse of the judicial process by repeatedly filing frivolous, repetitive, and malicious lawsuits against numerous officials of the judiciary, of the Office of the Attorney General of the State of Florida, and of the Florida Department of Corrections. In order to prevent further abuse, the Court deems it necessary to enjoin the Clerk of Court for the United States District Court for the Middle District of Florida from filing any additional cases or pleadings therein submitted by or on behalf of Procup, unless such case or pleading is submitted on behalf of Procup by an attorney admitted to practice before this Court.

Accordingly, the Court will on this date enter a Permanent Injunction in accordance with this Opinion.

injunction used in this instance will produce a similar result, i.e., the claim will be given careful scrutiny before it is filed herein.

**18.** The following characterization of the effect of inmate Green's abuse of the judicial system applies with equal force to Procup:

Through gross abuse of the legal process, Green's situation runs parallel with the epic story of the boy who yelled "wolf" too many times—when he actually needed help nobody would believe him. It may be that within the multitude of the claims Mr. Green has filed, he has somewhere alleged a legitimate grievance. Notwithstanding the meticulous efforts of busy federal district and appellate judges to find a real grievance, one may have

been overlooked. Mr. Green has only himself to blame for this. . . . One cannot blame prisoners for attempting to find legal loop holes to avoid imprisonment; however, at the same time, it is common sense that conscientious recognition of prisoner rights can continue only as long as the process is not abused by the prisoners to the extent that renders it meaningless. We are coming dangerously close to that time.

*Green v. Wyrick,* 428 F.Supp. 732, 735 n. 4 (W.D.Mo.1976), *quoting, Green v. Garrott,* Misc. No. 76–8184 (8th Cir. Nov. 2, 1976). The form of injunction to be entered in this case will not permit Procup to continue his indiscriminate filings, yet it will allow him access to the courts.