No. 80–2112. LONG ET AL. *v.* BONNES ET AL.; and

No. 80–2153. KENLEY, COMMISSIONER, DEPARTMENT OF HEALTH OF VIRGINIA, ET AL. *v.* YOUNG. C. A. 4th Cir. Certiorari denied. Reported below: No. 80–2112, 651 F. 2d 214; No. 80–2153, 641 F. 2d 192.

JUSTICE REHNQUIST, with whom JUSTICE O'CONNOR joins, dissenting.

By enacting the Civil Rights Attorney's Fees Awards Act of 1976 (Act), Congress created a statutory basis for courts, in the exercise of their sound discretion, to award attorney's fees to private litigants who prevail in litigation under various civil rights laws. The Courts of Appeals responsible for interpreting the Act have differed as to the correct construction of more than one of its provisions. Because the two cases from the Court of Appeals for the Fourth Circuit which the Court today declines to review present examples of this difference on the important issue of how to determine when a party "prevails" within the meaning of the Act, I dissent from the denial of certiorari.

The Act, codified as the last sentence of 42 U. S. C. § 1988, provides for the discretionary award of attorney's fees to the "prevailing party" in a lawsuit brought under one or more of eight specified statutes.[1] The Senate Report accompanying the Act, S. Rep. No. 94–1011 (1976), provides that "[i]t is intended that the standards for awarding fees be generally the same as under the fee provisions of the 1964 Civil Rights

---

[1] The relevant portion of 42 U. S. C. § 1988 provides:

"In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U. S. C. § 1681 *et seq.*], or in any civil action or proceedings, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964 [42 U. S. C. § 2000d *et seq.*], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Act."[2]  *Id.*, at 4.  Two principal cases from this Court deal with the question of when a party shall recover attorney's fees under the Civil Rights Act of 1964.  *Newman* v. *Piggy Park Enterprises, Inc.*, 390 U. S. 400 (1968), held that "one who succeeds in obtaining an injunction under . . . Title [II] should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Id.*, at 402.  *Christiansburg Garment Co.* v. *EEOC*, 434 U. S. 412 (1978), held that a defendant who successfully defended a charge of employment discrimination under Title VII could recover attorney's fees where the District Court found that the plaintiff's action "was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *Id.*, at 421.

In each of these cases, this Court found it unnecessary to decide any question respecting the definition of "prevailing party," because in each case the suit had gone to judgment in favor of the party seeking attorney's fees.  Nor has this Court had occasion to define "prevailing party" as used in the Act.  As more and more litigation has ensued in which claims for attorney's fees are made under the Act, however, more troublesome questions as to when a party has "prevailed" have confronted the Courts of Appeals.

The Court of Appeals for the Fourth Circuit, in one of the judgments which the Court today declines to review, has established a test for determining when a party "prevails" within the meaning of § 1988.  That test requires the trial court to determine

> " 'the precise legal/factual condition that the fee claimant has sought to change or affect so as to gain a benefit or

---

[2] Section 706(k) of Title II of the Civil Rights Act of 1964 provides in full: "In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."  42 U. S. C. § 2000e–5(k).

> be relieved of a burden. With this condition taken as a benchmark, inquiry may turn to whether as a quite practical matter the outcome . . . is one to which the plaintiff fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition.'" 651 F. 2d 214, 217 (1981), quoting *Bonnes* v. *Long*, 599 F. 2d 1316, 1319 (CA4 1979).

This test, which focuses only on the factual question of whether the lawsuit *caused* a change favorable to the plaintiff, apparently is well established in the Fourth Circuit, for it was followed by the Court of Appeals in another case denied review today, *Young* v. *Kenley*, 641 F. 2d 192 (1981). The effect of the *Bonnes* test is best demonstrated by the facts of *Young*.

Willie E. Young, a black woman, was hired in 1973 as a public health nurse by the Virginia State Department of Health. Because Young had graduated from a school that was not accredited by the National League of Nursing, she was assigned a category "A" position, the lowest salary level for public health nurses in Virginia. Although she was promoted to level "B" after complaining to the State's Equal Opportunity Coordinator, she was denied further promotion for lack of an accredited degree.

In February 1977, the Health Department eliminated the regulation which barred Young from further promotion, and on June 23, 1978, the Deputy State Health Commissioner invited Young to apply for advancement. Two days later, the change in policy notwithstanding, Young filed a complaint in federal court alleging that the State's promotion policy violated 42 U. S. C. § 1981 and § 1983. Although the complaint was dismissed for failure to obtain a right-to-sue letter from the Equal Employment Opportunity Commission (to which she had complained about the State's policy in 1976), and although she qualified for promotion in September 1978 by taking and passing the State's merit examination, Young filed an

amended complaint in October 1978. A hearing was held on November 2, 1978, and the parties reached a settlement two weeks later. The settlement granted Young a promotion to public health nurse level "C" retroactive to March 1977 with $992 in backpay, and upgraded her current position from level "B" to level "C" so that she would not have to relocate within the State.

The United States District Court for the Eastern District of Virginia twice denied Young's request for § 1988 attorney's fees, once after the settlement and once after a remand from the Court of Appeals. The District Court found that her "suit was wholly ineffective to remove [the regulatory] bar to promotion since the bar had been removed by a voluntary, unrelated act of the defendant well before [Young's] suit was instituted." *Young* v. *Kenley*, 485 F. Supp. 365, 368 (1980). The District Court also found that the objectives of the Act would not be furthered by the award of attorney's fees in this case: "While actions by 'private attorneys general' are to be rewarded under the attorney's fees provision, it could not be intended that a party be encouraged to file a suit where litigation would be superfluous. A benefit which can be obtained by an informal request need not be the subject of a formal demand." *Id.*, at 370.

Applying the standard set forth in *Bonnes*, the Court of Appeals for the Fourth Circuit reversed the denial of attorney's fees. In a brief *per curiam* opinion the court stated:

> "The district court properly noted that a plaintiff whose case ends in settlement may be considered a 'prevailing party' under the civil rights attorney's fees provisions. In making its determination whether the plaintiff was in fact the 'prevailing party,' the court applied the test set forth in *Nadeau* v. *Helgemoe*, 581 F. 2d 275 (1st Cir., 1978). After the district court rendered its opinion, this court issued its decision in *Bonnes* [v. *Long*, 599 F. 2d 1316 (1979)]. *Bonnes* establishes the test to be applied in this circuit for the consideration whether a

party to a case which ends in settlement is a 'prevailing party' within the meaning of 42 U. S. C. §§ 1988 and 2000e–5(k).

"Accordingly, the order of the district court is vacated and the case remanded for further proceedings consistent with this opinion." *Young* v. *Kenley*, 614 F. 2d 373, 374 (1979).

It would thus seem that the Court of Appeals for the Fourth Circuit implicitly recognized that its so-called *Bonnes* test conflicted with that followed by the Court of Appeals for the First Circuit in *Nadeau* v. *Helgemoe*, 581 F. 2d 275 (1978). The District Court on remand certainly treated the Court of Appeals' brief *per curiam* opinion as having this effect: "[I]t is apparent from the language of the . . . per curiam memorandum vacating and remanding this case, that a *Nadeau* analysis is inappropriate in this Circuit. A *Bonnes* analysis is required." 485 F. Supp., at 366.

The District Court, attempting to follow the "*Bonnes* analysis," again declined to award attorney's fees. Upon a second appeal, the Fourth Circuit reversed outright the denial of attorney's fees. It found that Young had obtained discernible benefits which she did not have before the suit was initiated: backpay and reclassification of her position to level "C." 641 F. 2d, at 195. That the receipt of these benefits was "caused" by the suit was evident to the Court of Appeals from the fact of settlement: "[S]ettlement in the midst of trial demonstrates [that] the lawsuit and the benefits obtained are causally related." *Ibid.* Thus, by filing a lawsuit to change a regulation which had already been changed, to obtain a promotion for which she had already qualified at the invitation of the State, and to receive other benefits which the District Court found were available upon informal request, Young became entitled to attorney's fees as a prevailing party under the standard adopted by the Court of Appeals for the Fourth Circuit.

A different approach to § 1988, and one which demonstrates the divergence of views among the Courts of Appeals, is that set forth by the Court of Appeals for the First Circuit in *Nadeau* v. *Helgemoe, supra.* Like the *Bonnes* test, the *Nadeau* test requires that the lawsuit result in some discernible benefit to the plaintiff. Unlike the *Bonnes* test, the *Nadeau* test also requires that the benefit have some basis in law:

> "Even if plaintiffs can establish that their suit was causally related to the defendants' actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense." 581 F. 2d, at 281.

Under this second requirement of the *Nadeau* test, it is doubtful that Young would have prevailed in her request for attorney's fees. Because the law already entitled her to every benefit she was seeking by litigation, it cannot be said that the benefits received in settlement were legally caused by her lawsuit.[3]

In my view, the standard adopted by the Court of Appeals for the First Circuit in *Nadeau* more closely approaches the

---

[3] The *Nadeau* test does not require a finding that the plaintiff would have prevailed on the merits, nor does it require the trial court to hold the very trial which the settlement was intended to avoid. As the Court of Appeals explained, at the time of settlement the trial court in most cases will have had "sufficient exposure to the facts and law . . . to determine, whether if the plaintiffs had continued to press their claims . . . , their action could be considered 'frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.' If the court reaches that conclusion, we think it should deny plaintiffs' attorney's fees on those issues regardless of the impact of their suit on defendants' willingness to improve the conditions of . . . the plaintiff class." 581 F. 2d, at 281 (citation omitted), quoting *Christiansburg Garment Co.* v. *EEOC,* 434 U. S. 412, 422 (1978).

intent of Congress in amending § 1988 than does the *Bonnes* standard of the Court of Appeals for the Fourth Circuit. When it passed the Act, Congress was aware that "[t]he effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens," H. R. Rep. No. 94–1558, p. 1 (1976), and that "a vast majority of the victims of civil rights violations cannot afford legal counsel [and] are unable to present their cases to the courts." *Ibid.* Accordingly, the Act was passed to encourage the "vigorous enforcement of modern civil rights legislation," S. Rep. No. 94–1011, p. 4 (1976), by " 'private attorney[s] general' advancing the rights of the public at large, and not merely some narrow parochial interest." 122 Cong. Rec. 35122 (1976) (remarks of Rep. Drinan, sponsor).

It is clear beyond peradventure that unless an action brought by a private litigant contains some basis in law for the benefits ultimately received by that litigant, the litigant cannot be said to have "enforced" the civil rights laws or to have promoted their policies for the benefit of the public at large. The *Bonnes* standard, at least as applied in No. 80–2153, seems largely to disregard this central purpose of § 1988, awarding attorney's fees even if the discernible benefit was conferred gratuitously by the defendant or was undertaken simply to avoid further litigation expenses. I would grant certiorari in one or both of these cases to resolve the conflict among the Circuits and to establish a standard consistent with the purposes of the Act.