Lynn A. PERCY

v.

Donald L. ALLEN, et al.

Supreme Judicial Court of Maine.

Argued Jan. 12, 1984.

Decided March 6, 1984.

Anthony, Howison & Landis, Peter J. Landis (orally), Mittel & Hefferan, Michael P. Asen, Portland, for plaintiff.

John E. Carnes, Maine Human Rights Com'n, Augusta, amicus curiae.

Gail Ogilvie (orally), William H. Laubenstein, Asst. Attys. Gen., Augusta, for defendants.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Plaintiff Lynn Percy seeks money damages under the Maine Human Rights Act from the named officials of the Department of Corrections. She contends that her application for employment as a prison guard at the Maine State Prison was rejected on the basis of gender in violation of 5 M.R. S.A. § 4572(1) (1979). This Court vacated a prior judgment of the Superior Court which ruled that defendants' failure to hire any women, including the plaintiff, was the product of a bona fide occupational qualification and that defendants were not obliged to change that normal mode of job assignment within the guard force at the prison.

We concluded that the prior judgment was predicated on an incorrect standard of law and remanded for determination of whether an accommodation was feasible. *Percy v. Allen,* 449 A.2d 337 (Me.1982). On remand the Superior Court (Knox County), without further evidentiary hearing, entered judgment for the defendants, again on the basis of the BFOQ defense. Plaintiff contends on appeal that defendants did not meet their burden of proof with respect to the issue of accommodation. We sustain the appeal and remand to the Superior Court for an award of damages.

The underlying facts of this case are described in detail in our earlier opinion. 449 A.2d at 339–42. The sole issue for the Superior Court on remand was whether the defendants proved by a preponderance of the evidence that during the period from June 1977 through July 1979 the privacy interests of inmates and plaintiff's right to employment could not coexist. Notwithstanding the judgment of the Superior Court, we find that defendants failed to establish that a reasonable accommodation of the inmates' and plaintiff's rights was infeasible and therefore the BFOQ defense fails.

During the two years at issue, defendants employed a job assignment policy which required that all guards be trained to perform and be capable of performing all duties in all areas of the prison. Defendants implicitly concede that the assignment policy necessarily disqualified plaintiff because she could not be trained in and assigned to areas where the privacy rights of male inmates would be implicated. In order to prevail on a BFOQ defense, defendants were required to prove the infeasibility of any reasonable accommodation. *Percy,* 449 A.2d at 343. The assignment policy which defendants rely on is, in reality, the source of the discrimination and it does not prove the infeasibility of any accommodation.[1]

---

1. Guards assigned to the night shift rotated among the various posts on an hourly basis to maintain alertness. The record contains evidence that this rotation on the night shift was

The Superior Court found that the two year period between the date on which plaintiff made application and the date on which she was hired constituted a reasonable length of time for defendants' reorganization of the guard system. The trial court relied on evidence that the system of selective assignment introduced in 1979,[2] which resulted in plaintiff's hiring, could not have been implemented earlier because of a high turn-over rate in the guard force and because of the training program which consisted of shadowing a more experienced guard in the residential units of the prison. We agree with the Superior Court that there was demonstrated an improvement in the turn-over rate and a modification of the training program but that does not establish that an accommodation could not have been afforded at an earlier time. With the exception of the discredited job assignment policy, defendants presented no evidence to support the conclusion that a selective job assignment of plaintiff was infeasible before July of 1979. Further, there is no evidence that the apparent clash between employment and privacy rights could not have been addressed by means other than the refusal to hire plaintiff. As we stated in our earlier opinion:

> The need to accommodate the interests of the employee and the institution is grounded in the weighty anti-discrimination considerations at issue, embodied in the equal employment laws of the Maine Human Rights Act. So considerable is the importance of equal employment opportunity under the Maine statute that the arrangement of job assignments and even the structure of the facility itself are not immune from reasonable alterations that are necessary to effect a harmonization of employment practices with

that opportunity. The importance of the anti-discrimination principle is further revealed by the procedural framework which casts upon the employer the burden of demonstrating that such accommodation would have been unfeasible.

*Percy*, 449 A.2d at 345. We therefore reverse the judgment for defendants on the issue of liability and remand for an award of back pay and lost benefits.

The entry is:

Judgment reversed.

Remanded for entry of judgment in favor of plaintiff on liability and for award of back pay and lost benefits consistent with the opinion herein.

All concurring.

essential to security. In contrast, the record contains no evidence justifying the job assignment policy as it related to the day shifts where rotation was not required and was not employed.

2. Under the new assignment system, plaintiff has worked as a cook, a library officer and a yard officer in the industrial areas. Defendants testified that these positions are no longer "guard" positions but rather "supervisory" positions. This re-classification does not establish the legitimacy of the prior requirement that all "guards" be able to perform in all areas. Rather, the reclassification highlights defendants' failure to establish that a reasonable accommodation was impossible prior to July of 1979.