**MAINE HUMAN RIGHTS COMMISSION**

v.

**Donald ALLEN, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 18, 1984.

Decided April 11, 1984.

Sunenblick, Fontaine & Reben, Stephen P. Sunenblick (AFSCME) (orally), Portland, for plaintiff.

Gail Ogilvie, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

VIOLETTE, Justice.

In this case, we must determine whether the American Federation of State, County and Municipal Employees ("AFSCME") as intervenor in an employment discrimination suit prosecuted by the Maine Human Rights Commission ("the Commission") against the Commissioner of the Department of Corrections [1] ("the Department") was a "prevailing party" for the purpose of entitlement of reasonable attorneys' fees and costs under the Maine Human Rights Act. 5 M.R.S.A. § 4614 (Supp.1983). The Superior Court, Knox County, decided that AFSCME was not entitled to fees and costs and entered judgment accordingly. We agree and affirm.

## I.

The employment discrimination suit that spawned the instant appeal originated in June, 1979, as a class action on behalf of all females who had sought or would seek jobs as prison guards at the Maine State Prison.[2] The complaint alleged that defendants had a history of failing or refusing to

---

1. Originally, this suit was brought against the Commissioner of the Department of Mental Health and Corrections. Effective January 15, 1984, the legislature established a separate Department of Corrections. 34-A M.R.S.A. § 1202 (Pamph.1983). Donald Allen is the Commissioner of the newly-established Department. Also named as defendants in the original suit were the Director of the Bureau of Corrections, the Warden of the Maine State Prison and the Commissioner of the Department of Personnel.

2. The facts and issues raised in the underlying suit are reported in two Law Court opinions. *Percy v. Allen,* 472 A.2d 432 (Me.1984); *Percy v. Allen,* 449 A.2d 337 (Me.1982).

recruit and hire female applicants for guard positions at the Maine State Prison at Thomaston. Plaintiff sought declaratory and injunctive relief as well as money damages to compensate for lost wages and other benefits. After defendants filed an answer, the parties entered into a stipulation and consent decree that was approved and filed on August 5, 1980. As is pertinent to the present appeal, the decree provided as follows in Paragraph 5:

Female guards employed by the Department at the Maine State Prison shall have the same employment duties and responsibilities and shall receive the same compensation and benefits of employment as the male guards subject to the following exception: female guards shall not be assigned to the following duties which might infringe on the male inmates' rights to privacy:

a. duties inside the Prison's residential units or inside the Prison's laundry where the inmates' shower facilities are located except during limited periods of time, such as during "count" periods, "pill runs," tours, emergencies, or providing escort services for cell lock-ins;

b. single guard escort duty outside the Prison, except to Pen-Bay Hospital;

c. performance of a strip search on a male inmate.

The Superior Court justice who approved the decree retained jurisdiction over the action.

By early July 1981, the justice had received 26 complaints from inmates concerning female guards being posted in the residential and shower areas. On July 3, 1981, the justice advised the prison warden of the complaints and reminded him that Paragraph 5 of the consent decree envisioned female guard presence in the residential

and shower areas to be "infrequent and limited." In response, the warden stopped assigning female guards routinely to such areas.

On July 9, 1981, four inmates filed a motion to intervene as defendants in the underlying suit and to vacate the consent decree.[3] M.R.Civ.P. 24(a). The inmates claimed that no party to the existing lawsuit represented their interests, especially their right to privacy. The inmates' motion to intervene was granted.

At the hearing on the inmates' motion held on October 2, 1981, counsel for defendants advised the court that Paragraph 5 of the decree was also creating friction within the guard ranks and that prison administrators were not satisfied with its terms. Because female guards could not be assigned to routine duties within the residential areas, the females were receiving a disproportionate number of the more desirable, non-contact assignments within the institution but continued to receive the same rate of pay as their male counterparts. Also, the females were not receiving experience in all areas of the prison, a prerequisite to advancement within the guard ranks. In light of the guards' dissatisfaction, defendants' counsel suggested that the guards as a class be joined as a party to the suit to insure that their interests would be represented. M.R.Civ.P. 19(a). The presiding justice refused joinder but ordered that the guards be notified of the post-consent decree proceedings and be allowed to intervene upon proper motion. On October 20, 1981, AFSCME, on behalf of the prison guards, filed a motion to intervene. After hearing on January 28, 1982, AFSCME's motion was granted by order of court filed February 1, 1982.[4] In its motion, AFSCME claimed that by restricting female guard duties within the

---

3. At the hearing on the motion, however, the inmate intervenors advised the court that enforcement of the decree as written would be acceptable. Regardless of the precise relief sought, the inmate intervenors clearly desired to limit female employment opportunities within

the prison by restricting females to guard duties outside the residential areas.

4. In the same order, the court granted another motion to intervene filed by Joan Young, a female correction officer at the Maine State Prison.

prison, both the Department and the consent decree were creating a new job classification in violation of the collective bargaining contract it had entered with the union. AFSCME's motion to intervene, therefore, focussed on the consent decree's impact on the collective bargaining agreement. It only became clear at the January 28 hearing that AFSCME was advocating duty parity between the male and female guards.

Between the time AFSCME filed its motion to intervene (October 20, 1981) and the time its motion was heard (January 28, 1982), the inmate intervenors, MHRC and the Department filed separate motions for modification of the consent decree. The inmates' motion requested that Paragraph 5 of the original consent decree be modified so as to further restrict female guards' employment rights.[5] MHRC's motion requested that Paragraph 5 of the original consent decree remain unchanged except that the prohibition against female guards performing duties within the prison's residential areas be eliminated. The Department's motion reiterated that adherence to Paragraph 5 of the original consent decree

had created friction between the male and female guards and proposed an alternative to Paragraph 5 that simultaneously expanded female guards' employment rights and protected the inmates' privacy rights through the providing of protective screening.[6] To various degrees, therefore, by the time AFSCME argued its motion to intervene, all parties except the inmate intervenors sought to expand the female guards' employment rights within the prison.

Trial was held in Superior Court, Knox County, on all motions to modify on September 15 and November 1, 1982. The Department, AFSCME, MHRC and the inmate intervenors all called and cross-examined witnesses. After trial and briefing by the parties, the court issued the following order regarding Paragraph 5:

> That Paragraph 5 be stricken, and the following inserted in its place:
>
> 5. Female guards employed by the Department at the Maine State Prison shall have the same employment duties and responsibilities and shall receive the same compensation and benefits of employment as male guards subject to the following exception: female

---

**5.** The inmates proposed that Paragraph 5 read as follows:

> Female guards employed by the Department at the Maine State Prison shall have the same employment duties and responsibilities and shall receive the same compensation and benefits of employment as the male guards subject to the following exception: female guards shall not be assigned to the following duties which might infringe upon the male inmates' rights to privacy:
>
> (a) duties inside the prison residential units except for limited periods of time during "count" periods only;
>
> (b) duties inside the prison laundry and gymnasium where the inmates' shower facilities are located, or in areas where these shower facilities can be viewed, at any time;
>
> (c) single guard escort duty outside the prison, except to Pen-Bay Hospital; and
>
> (d) performance of a strip search of a male inmate.

**6.** The Department's reformulation of Paragraph 5 provided as follows:

> The Department of Corrections has concluded that it can balance its various legal obligations only by adhering to the following policy:

1. All guards employed by the Department of Corrections at the Maine State Prison shall have the same employment duties and responsibilities and shall receive the same compensation and benefits of employment provided, however, that the following assignments will not be made to women guards:
   a. strip searches of male inmates;
   b. duties inside the prison's laundry;
   c. single guard escort duty outside the prison except for minimum security furlough eligible inmates.
2. Individual shower stalls in the various housing units will have a protective barrier, such as a shower curtain, of sufficient length to cover the bodies of inmates.
3. No more than one-half of the guards assigned at a given time to the East Wing and the Segregation Units of the prison shall be female officers.
4. During emergencies, guards regardless of sex may perform any necessary duties including those otherwise prohibited by reason of sex.

guards shall not be assigned to the following duties which might infringe on the male inmates' rights to privacy:

a. duties inside the Prison's laundry where the inmates' shower facilities are located;

b. duties inside residential units which are not provided with toilet/shower screening as ordered in Paragraph 6 of this decree, except during limited periods of time such as during count periods, pill runs, tours, emergencies, or providing escort services for cell lock-ins;

c. performance of a strip search on a male inmate. (Such searches shall be done out of the females' presence.) The Department may use its discretion in assigning female guards to single guard escort duty, having in mind any size/strength differential and the criminal history of the inmate.

That the following Paragraph 6 be added:

6. Within four months of the date of the Order amending the Consent Decree, the Department shall forward to the Court a summary of plans made to provide privacy screening for showers and toilets other than the showers in the laundry. Within eight months of said date, privacy screening shall be installed in the lower two tiers of the East Wing. Within 20 months, such screening shall be provided for the remaining residential units, except those in segregation. Screening shall be provided as soon as possible for the showers in the recreation area.

The amended consent decree, therefore, continues to prohibit female guards from performing strip searches on male inmates and performing duties within the prison's laundry area where the shower facilities are located. The amended decree, however, lifts the prohibition against females performing all routine duties in all residential areas except the segregation area as soon as privacy screens and curtains are installed as provided in Paragraph 6.[7] The decree does not provide for duty parity as advocated by AFSCME.

On February 9, 1983, AFSCME filed a motion for attorneys' fees under the attorney's fee provision of the Maine Human Rights Act. 5 M.R.S.A. § 4614 (Supp. 1983). AFSCME's motion was denied and a timely appeal was taken to this Court.

II.

We have yet to decide the scope of the coverage afforded under Section 4614. That section provides:

In any civil action under this Act the court, in its discretion may allow the prevailing party, other than the commission, reasonable attorneys' fees and costs, and the commission shall be liable for attorneys' fees and costs the same as a private person.

Section 4614 tracks the language of its federal counterparts, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k), and the Attorney's Fee Act of 1976, 42 U.S.C. § 1988. Attorneys' fees plainly may be awarded under Section 4614 if a party is a "prevailing party" in any civil action brought under the Maine Human Rights Act. Recently, this Court adopted the standard announced by the First Circuit in *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir.1978) for determining the "prevailing party" in a consent decree case where a claim for attorneys' fees was raised under 42 U.S.C. § 1988. *Wyman v. Inhabitants of the Town of Skowhegan*, 464 A.2d 181, 183 (Me.1983). Given the similarity in language between § 1988 and Section 4614 of Maine's Act, we hold that the test adopted in *Wyman* controls the analysis in the present case. *Cf. Percy v. Allen*, 449 A.2d 337, 342 (Me.1982); *Maine Human Rights*

---

7. This Court has noted previously that reasonable alterations to the structure of an institutional facility itself are entirely proper under the Maine Human Rights Act when necessary to harmonize the privacy rights of inmates with equal employment opportunity. *Percy v. Allen*, 449 A.2d 337, 345 (Me.1982).

*Commission v. City of Auburn,* 408 A.2d 1253, 1261 (Me.1979). We also hold, consistent with *Wyman,* that should AFSCME establish itself as a "prevailing party" under the Act, it "should ordinarily recover an attorney's fee unless special circumstances would render an award unjust." *Wyman,* 464 A.2d at 185, *quoting, Hensley v. Eckerhart,* — U.S. —, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983).

■ To establish its entitlement to attorneys' fees under Section 4614, AFSCME must show (A) that the amended consent decree brought about improvement in its position, (B) that AFSCME's intervention and its attorneys' efforts were a "necessary and important factor" in bringing about the improvement and (C) that the improvement was "legally compelled." *Wyman,* 464 A.2d at 183, *citing, Nadeau,* 581 F.2d at 279–81. We find that as to requirement (B), AFSCME failed the *Wyman* test.

### III.

#### A. Improvement in AFSCME's Position.

AFSCME sought duty parity between male and female guards. AFSCME maintained that duty parity was required under the existing job classification structure contained in its collective bargaining contract with the State and advocated that duty parity at the Maine State Prison should be required as a matter of state law under the Maine Human Rights Act. *See Griffin v. Michigan Department of Corrections,* 30 FEP Cases 638 (E.D.Mich.1982) (court held under Title VII of the Civil Rights Act of 1964 that male inmates have no protected right against being viewed in the nude by female correction officers and, therefore, state corrections department may not rely on the bona fide occupational qualification defense in limiting job duties of female corrections officers).

■ The amended consent decree does not provide for duty parity between male and female guards. The amended decree, however, does make the duties of male and female guards substantially more equal than they were under the original decree, especially as to duties in the residential areas of the prison.[8] A party passes the first part of the *Wyman* test as long as a significant issue is resolved in favor of the party seeking relief so that some of the benefit sought through the litigation is achieved. *Wyman,* 464 A.2d at 184, *citing, Bonnes v. Long,* 651 F.2d 214, 218 (4th Cir.1981), *cert. denied,* 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982).

The primary issue the Superior Court was required to resolve in the present case was how best to balance the employment rights of the then-current and prospective female guards at the Maine State Prison with the privacy rights of the inmates. The alteration of the decree in such a way as to insure that the duties of male and female guards within the residential areas will be substantially equal upon installation of the privacy screening is a sufficient enough improvement in AFSCME's position to warrant the conclusion that AFSCME meets the first part of the *Wyman* test.

#### B. Efforts of AFSCME's Counsel as a Necessary and Important Factor in Achieving the Amendment to the Consent Decree.

■ AFSCME claims that "but for" its intervention, no party would have come forward to vacate or amend the consent decree in such a way so as to effectuate greater duty parity between the sexes. Indeed, if AFSCME's intervention was "responsible" for the restructuring of the consent decree, the efforts of its counsel

---

8. Under the original decree, female guards were allowed to work in residential areas only "for limited periods of time, such as during 'count' periods, 'pill runs,' tours, emergencies, or ... escort [duty] for cell lock-ins." Female guards also were prohibited from conducting strip searches on inmates. Under the amended decree, females will be allowed to perform all work duties (except strip searches) in all residential areas of the prison except the segregation unit by August, 1984.

would meet the second part of the *Wyman* test. 464 A.2d at 184.

There is no dispute that AFSCME's counsel actively participated in all phases of the proceedings between the time it filed its motion to intervene on October 20, 1981, and the time the Superior Court justice issued the order amending the consent decree on January 10, 1983. A careful review of the entire record, however, indicates that the only party satisfied with the terms of the original decree was the group of inmate intervenors. All the remaining parties, therefore, were dissatisfied to one extent or another with the original decree and, given their participation in the proceedings following the inmates' intervention, were "responsible" for the formulation of the amended decree.

AFSCME makes much of the fact that it was the first party to file a motion to modify the decree. AFSCME did so in the context of its motion to intervene filed on October 20, 1981. We have previously noted that AFSCME's motion was couched in terms of the Department's violation of the collective bargaining agreement by illegally creating a new job classification and not in terms of duty parity. Even assuming that AFSCME's motion properly advocated duty parity, the Department itself had expressed concern, almost three weeks earlier at the hearing on the inmates' motion to intervene, that the decree as written was creating friction within the guard ranks because of the preferential job assignments that were devolving to the female guards. The Department, of course, later filed its motion to modify with a suggested alteration to Paragraph 5, *see* note 6, *supra*, that closely paralleled the modification in the decree eventually ordered by the court. By this time, MHRC also had filed a motion requesting that Paragraph 5 be modified to allow female guards to perform all guard duties in the residential areas. In short, merely because AFSCME was the first party to file a motion to modify does not automatically trigger a finding by this Court that AFSCME was "responsible" for the remedial action taken by the Superior Court. *See Wyman*, 464 A.2d at 184. Given the fact that the Department and MHRC were seeking relief in the same form, if not in the same degree as AFSCME, we cannot conclude that AFSCME was "responsible" for the amended decree.

AFSCME's similar claim that it alone presented the evidence that served as the underpinning for the court's decision to amend the decree, is equally without merit. All parties to this action appeared at the hearings, presented evidence and cross-examined witnesses. Except for those witnesses called by the inmate intervenors, every witness associated with the Maine State Prison who testified either stated their personal dissatisfaction with the consent decree as it then read or related problems that were created by the decree.[9] In fact, MHRC called the expert, an architect specializing in planning, renovating and establishing guidelines for correctional facilities, who testified as to the structural modifications that could be made inside the prison to accomodate the employment rights of female guards while protecting inmates' privacy rights. This testimony obviously formed the basis for Paragraph 6 of the justice's order. AFSCME, MHRC and the Department were all responsible for presenting the evidence that formed the basis for the court's ruling.

In sum, AFSCME may have made a contribution to the litigation effort that resulted in a court order requiring greater duty parity between male and female guards, but its contribution was not significantly different from the efforts made by both

9. The Department called Arthur Kiskilla, Guard Major at the prison, Paul Vestal, Warden of the Maine State Prison and Nelson Riley, Administrative Captain in charge of job assignments at the prison. MHRC called three female guards employed at the prison. AFSCME called Walter Breen, staff member of AFSCME who represents employees at the Maine State Prison in grievances against the Department and monitors compliance with the collective bargaining contract, and Donald Allen, the Commissioner of the Department of Corrections.

**860**

MHRC and the Department. The efforts of AFSCME's counsel cannot be quantified or separated logically from the efforts of counsel for MHRC or the Department for the purpose of finding that AFSCME meets the second part of the *Wyman* test.

C. Improvement in AFSCME's Position Legally Compelled.

■ There is no question left after our opinion in *Percy v. Allen*, 449 A.2d 337 (Me.1982), that reasonable accommodation between female guards' employment rights and inmates' privacy rights is required under the Maine Human Rights Act. Improvement, in terms of increasing duty parity between male and female guards at the Maine State Prison, therefore, was required as long as those employment rights were carefully balanced against the privacy rights of inmates. AFSCME meets the third part of the *Wyman* test.

IV.

■ Notwithstanding the fact that AFSCME does not meet the *Wyman* test for a "prevailing party," this litigation resulted in three "winners"—AFSCME, MHRC and the Department, and one "loser"—the inmate intervenors. We perceive no way that we would be promoting the private enforcement of civil rights if we were to award counsel fees to AFSCME under the facts presented here.

Accordingly, the entry is:

Judgment affirmed.

All concurring.