PEOPLE HELPERS FOUNDATION, INCORPORATED; Robert E. Elam; Rebecca Thomas; Gary Thomas, Plaintiffs–Appellees,

v.

CITY OF RICHMOND, VIRGINIA, Defendant–Appellant,

and

Joyce Riddell; William T. Riddell, Defendants.

Local Government Attorneys of Virginia, Incorporated, Amicus Curiae.

PEOPLE HELPERS FOUNDATION, INCORPORATED, Plaintiff–Appellee,

and

Robert E. Elam; Rebecca Thomas; Gary Thomas, Plaintiffs,

v.

CITY OF RICHMOND, VIRGINIA, Defendant–Appellant,

and

Joyce Riddell; William T. Riddell, Defendants.

Nos. 92–1839, 93–1501.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 29, 1993.

Decided Dec. 27, 1993.

G. Timothy Oksman, City Atty., Richmond, VA, argued (Michele Anne Gillette, Asst. City Atty., on brief), for appellant.

Harold Jonathan Krent, Depaul University College of Law, Chicago, IL, for amicus curiae.

Joseph William Kaestner, Kaestner & Associates, Richmond, VA, argued (T. Andrew Lingle, on brief), for appellees.

Before WIDENER, Circuit Judge, and BUTZNER and CHAPMAN, Senior Circuit Judges.

## OPINION

CHAPMAN, Senior Circuit Judge:

This appeal arises from a jury's determination that the City of Richmond ("the City") violated the Federal Fair Housing Act, 42 U.S.C. § 3601, with respect to People Helpers Foundation, Inc. ("People Helpers"). The jury awarded People Helpers one dollar punitive damages but it found no compensatory damages. Following the verdict, the district court granted a permanent injunction against the City and awarded attorney's fees and costs to People Helpers as the prevailing party. Later, the court found the City in violation of the injunction because it assessed People Helpers with personal property taxes and failed to recommend tax exempt status for People Helpers to the Virginia General Assembly. We vacate the jury's award of one dollar punitive damages, the court's award of attorney's fees and costs, and the court's finding that the City was in contempt of the injunctive order.

I.

People Helpers, a nonprofit corporation based in Richmond, Virginia, helps developmentally disabled people find housing in the Richmond area. Robert Elam is the chief operating officer of People Helpers.

In early 1991, People Helpers began leasing apartments in a building at 1207 West 47th Street ("the Building") in Richmond and started placing some of their clients in these apartments. In October 1991, People Helpers purchased the Building.

In the spring of 1991, the City began receiving complaints from neighbors of the Building, including Joyce Riddell, concerning various activities in and around the Building, including prostitution, drug use, overcrowding and panhandling. Ms. Riddell, a former member of the Richmond City Council, and another local resident, Diana Rollins, made racist statements to City administrators about the people who were being housed in the Building.

The City administrators handling these complaints recognized the improper bias, but also recognized that the complaints had some legitimacy and decided to make an inquiry. Two City police detectives conducted an investigation in July 1991, during which they were told by neighbors that some of the People Helpers clients were abusing alcohol and drugs publicly. Based on their investigation, the police officers determined there was not sufficient evidence to prosecute either the residents or the landlord for criminal conduct.

On August 2, 1991, Eileen Wimbish, a City zoning officer who had previously handled a complaint concerning the Building, conducted an inspection of the property. The inspection was made although the Building had a valid certificate of occupancy. At trial, Roy Benbow, a City zoning administrator, testified that the inspection was made because local residents complained about illegal activities in and around the Building. Ms. Wimbish, along with Mr. Elam, walked through the units that People Helpers' clients leased. Ms. Wimbish also reviewed the written leases of the People Helpers' clients. Two days

later, a certificate of zoning compliance was issued to the property owner.

During August and September 1991, Ms. Riddell, apparently unsatisfied with the City's investigation, continued her personal campaign against People Helpers by calling and complaining to a variety of City officials, and asking that the City close down the Building.

In November 1991, People Helpers and Elam filed suit in federal district court against the City, alleging a violation of the Federal Fair Housing Act, codified at 42 U.S.C. § 3601, and claiming that the City had intimidated People Helpers and discriminated against its disabled clients in violation of 42 U.S.C. § 3617.[1]

On April 10, 1992, the court heard and denied the City's motion for summary judgment. At the hearing, the court made the following comments as to its perceptions of the case:

> Because Mrs. Riddell was a former City Councilperson? Did she pull everybody's chain and they overreacted because she had friends in high places, that sort of stuff? Had she been some judge's secretary, hadn't she, before she ran for City Council? ... Where the City picks up the animus that Ms. Riddell had toward the disadvantaged people, the City gets branded with the same responsibility when they get complaints from citizens to go out and investigate something, if they go about it with too much exuberance and enthusiasm where they know they are acting to a racist request, they get branded with the same torch, don't they?

J.A. 113–14. The court further stated:

> It seems to me that the City overreacted in this case simply because one of their former officials could pull their chain, without ever looking at it objectively. You got in lockstep with Ms. Riddell to accomplish really an illegal result, and that is, to get People Helpers, conceptually supposed to take care of disadvantaged people, out of

her neighborhood. That's the long and short of it.... But not many of us have any enthusiasm about city officials being able to push people around simply because you get some disgruntled ex-City Councilperson who wants to run the world and the City falls in line behind her and does all sorts of outrageous things to a legitimate business. That's what the case is going to project as when it goes to the jury.

J.A. 124–26.

On April 27, 1992, the case proceeded to trial. At the conclusion of the evidence, Judge Williams gave instructions to the jury, which included a statement that "[a] finding of actual or compensatory damages is not required as a condition to the award of punitive damages ..." J.A. 487. The jury found that the City had violated the Federal Fair Housing Act and awarded one dollar in punitive damages, but did not award compensatory damages.

Following the trial, Judge Williams determined that discriminatory practices had occurred and granted the plaintiff's motion for a permanent injunction. The injunction provided:

> [T]he Defendant City of Richmond, its officers, agents, and employees are permanently enjoined from coercing, harassing, intimidating, or interfering with Plaintiff People Helpers Foundation, Inc., its officers, directors, agents, or employees, as well as those people to whom the Plaintiff provides housing. In addition, the City of Richmond shall take no act which interferes with Plaintiff's ability to provide housing to mentally or physically handicapped persons.

J.A. 497.

The court found that People Helpers was a prevailing party, under 42 U.S.C. § 3613(c)(2), and was entitled to attorney's fees and costs; in so doing, the court concluded that because the City's Rule 68 offer of judgment was not more favorable than the

---

1. Section 3617 provides: "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617 (1988).

final judgment, People Helpers was entitled to attorney's fees and costs, which it established in the amount of $10,000.

Three months after the injunction had been entered, Elam contacted the City Council member for his district, Joseph Brooks, and asked that People Helpers' request for tax exempt status be placed before the Council Legislative Committee. This Committee, composed of five members, met in November 1992 and voted not to recommend People Helpers for tax exempt status.[2] One of the reasons for such refusal was that People Helpers had past due personal property taxes. In 1990, '91 and '92 the City had abated the personal property taxes assessed against People Helpers. However, on September 23, 1992, the City reassessed all personal property taxes from 1990 forward. On December 23, 1992, after the refusal to recommend tax exempt status, People Helpers filed a petition for a rule to show cause why the City should not be found in contempt for violating the court's June 23, 1992 order by interfering with People Helpers because it failed to recommend tax exempt status to the General Assembly. After a hearing on April 7, 1993, the court found that People Helpers had established by clear and convincing evidence that the City had violated the court's injunction of June 23, 1992 and ordered the City to abate all personal property taxes assessed against People Helpers for 1991, 1992 and 1993. Further, the court ordered the City to receive and process another application for the exempt status without any consideration of "so-called delinquent taxes," which the district court had abated.

The City appeals the jury's one dollar punitive damages award, the court's award of attorney's fees and costs, and the finding of contempt. The City also asserts that Judge Williams' personal bias and prejudice caused him to err in three separate instances during the litigation and precluded an impartial trial.

## II.

■ We begin with the City of Richmond's assertion that the district court exhibited personal bias against the City which precluded an impartial trial. This court reviews questions of judicial bias *de novo*. *See Shaw v. Martin*, 733 F.2d 304 (4th Cir.), *cert. denied*, 469 U.S. 873, 105 S.Ct. 230, 83 L.Ed.2d 159 (1984).

■ Under the United States Code, a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C.A. § 455(a) (West 1993). Disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. *Rice v. McKenzie*, 581 F.2d 1114, 1116 (4th Cir. 1978). The relevant benchmark for our inquiry is whether a reasonable person would have a factual basis to doubt the impartiality of the judge, and not whether the judge is in fact impartial. *In re Beard*, 811 F.2d 818, 827 (4th Cir.1987). The alleged bias must result in an opinion on the merits on a basis other than that learned by the judge from his or her participation in the matter. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). In short, the nature of the judge's bias must be personal and not judicial. *Shaw v. Martin*, 733 F.2d 304, 308 (4th Cir.1984).

■ Specifically, the City of Richmond argues that the Judge's personal bias caused him to err in deciding the City's motion for summary judgment, in properly instructing the jury on the applicable law, and in denying the City's motion for judgment as a matter of law. Judge Williams' bias, the City argues, stems from his past personal contacts with Ms. Riddell, a former City of Richmond Councilperson, who lodged various complaints against People Helpers and its clients. The City asserts that Judge Williams' past contacts with Ms. Riddell have caused Judge Williams strong personal animus toward Ms. Riddell and therefore the City of Richmond.

After careful review of the record, we determine that Judge Williams' comments, while perhaps caustic, are not indicative of a

**2.** Tax exempt status is granted by the Virginia General Assembly but first requires a resolution from the Richmond City Council considering such exemption. *See* Va.Code Ann. § 30–19.04 (Michie 1992).

⬛

personal bias against the City of Richmond. The City has pointed to several comments made by Judge Williams while he presided during arguments made on the City's motion for summary judgment. The Judge's comments indicate that he was aware of Ms. Riddell's past professional positions and practices. However, taken in context, we believe the comments demonstrate the court's feelings about the City's conduct, the court's assessment of Ms. Riddell's conduct and the court's assumption that the City had attempted to evict the People Helpers' clients solely on the recommendations of one person who had personal distaste for minorities. The court was certainly entitled to assess the validity of People Helpers' case in reaching a decision on the City's motion for summary judgment. Further, it seems that the court's objective evaluation of the case was made in an effort to further the settlement process. The Judge's comments, at worst, show his disapproval of the actions taken by the City, but they are not indicative of any personal bias. Additionally, these comments were not made during the trial on the merits or in the presence of the jury. Because the Judge has merely voiced his perceptions concerning the case, we cannot conclude that a reasonable person would question his impartiality.

Because we find that the court exhibited no personal bias against the City, we need not reach the questions of whether the personal bias of the Judge caused him to err in deciding the City's motions for summary judgment and judgment as a matter of law and in instructing the jury on the applicable law.

### III.

⬛ We next examine the jury's verdict of one dollar punitive damages and no compensatory damages. Under the Federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, Congress gave limited guidance as to the scope and purpose of available damages,[3] and did not limit punitive damages to situations in which compensatory damages have been first awarded. There is no established federal common law rule that precludes the award of punitive damages in the absence of an award of compensatory damages.

However, in *Air Line Pilots Ass'n Int'l v. Scheduled Skyways*, 567 F.Supp. 171 (W.D.Ark.1983), *modified on other grounds*, 738 F.2d 339 (8th Cir.), *dismissed on other grounds*, 746 F.2d 456 (8th Cir.1984), the court refused to allow a punitive damages claim when the plaintiffs failed to first allege compensatory damages. The plaintiffs brought suit under the Railway Labor Act, alleging that the firing of an airline pilot was in violation of the Act because it was motivated by the pilot's union activities. Without applying an analysis, the court said succinctly, "Absent a claim for compensatory damages, a party may not generally recover punitive damages." *Id.* at 179.

In *Cronin v. Sears, Roebuck & Co.*, 588 F.2d 616 (8th Cir.1978), the plaintiff sued his employer alleging a violation of the Labor Management Relations Act for breach of its collective bargaining agreement. The plaintiff sought both compensatory and punitive damages. The trial court entered nominal damages of a dollar for the plaintiff but vacated a jury's award of $10,000.00 punitive damages. The Eighth Circuit first vacated the district court's one dollar nominal damage award and determined that the plaintiff was not eligible to collect the punitive damages award vacated by the district court because actual damages did not exist. Like the *Scheduled Skyways* court, the Eighth Circuit offered no rationale for its conclusion but it did cite a number of federal cases in which the courts applied state law prohibiting punitive damages in absence of a compensatory award.

The Federal Fair Housing Act is silent on the issue of punitive damages and is no help as we consider this issue. In *Air Line Pilots Ass'n Int'l v. Scheduled Skyways, supra,* the plaintiffs sued under the Railway Labor Act,

---

**3.** The Code, in pertinent part, provides: "Whoever, whether or not acting under color of law, by force or threat of force willfully injuries (sic), intimidates or interferes with, or attempts to injure, intimidate or interfere with ... shall be fined not more than $1,000, or imprisoned not more than one year, or both; and if bodily injury results shall be fined not more than $10,000, or imprisonment for any term of years or for life." 42 U.S.C. § 3631 (1988).

45 U.S.C. § 152, which, as the Federal Fair Housing Act, is silent on the issue of punitive damages or whether such are recoverable when compensatory damages have not been awarded. In *Cronin v. Sears, Roebuck & Co., supra,* the plaintiff sued under the Labor Management Relations Act, 29 U.S.C. § 185(a), which makes no provision for punitive damages when compensatory damages are not recovered. In the absence of a specific statutory directive on this issue, federal courts have chosen to apply the majority rule that punitive damages are not recoverable when compensatory damages have not been awarded.

A majority of the fifty states prohibit punitive damages awards when a fact finder fails to award compensatory damages. *See* W. Prosser, et al., *Prosser and Keeton on Torts* § 2, at 14 (5th ed. 1984) ("The greater number of courts have said that [punitive damages] are limited to cases in which actual compensatory damages are found by the jury."). In particular, the Commonwealth of Virginia follows this majority rule. *See Gay v. American Motorists Insurance Co.,* 714 F.2d 13 (4th Cir.1983); *Zedd v. Jenkins,* 194 Va. 704, 74 S.E.2d 791, 793 (1953). The reasoning supporting the majority rule is the belief that punitive damages are not appropriate in cases where a plaintiff has failed to demonstrate actionable harm. *See* James A. Ghiardi & John J. Kircher, *Punitive Damages: Law and Practice,* § 5.37 (1985 and Supp.1993). When a plaintiff has failed to prove actionable harm, compensatory damages are not recoverable and logically it follows that punitive damages are also barred. To hold otherwise would create a windfall by allowing the recovery of damages when no actionable harm has been suffered.

Thus, we are persuaded by the law of a majority of the states, the reasoning behind the law, and the federal case law applying the rule in the absence of statutory language to the contrary that punitive damages are not recoverable in this circumstance.

## IV.

■ The district court awarded attorney's fees after determining that People Helpers was the prevailing party. Under 42 U.S.C. § 3613(c)(2), the court, in its discretion, "may allow the prevailing party ... a reasonable attorney's fee and costs." The district court pointed out that the term "prevailing party" has the same meaning under the Fair Housing Act as in 42 U.S.C. § 1988. 42 U.S.C. § 3602(*o*) (1988).

Under *Bonnes v. Long,* 599 F.2d 1316 (4th Cir.1979), *cert. denied,* 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982), a prevailing party should ordinarily recover attorney's fees unless special circumstances would render such an award unjust. The district court reasoned that People Helpers was the prevailing party because it was successful in obtaining both punitive damages and injunctive relief, and although People Helpers failed to obtain compensatory damages, it did establish that certain actions by City officials constituted intentional, illegal discrimination. The district court found that the issue of special circumstances was not present since it had not been raised.

In *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989), the Supreme Court reaffirmed the general principle that plaintiffs cross the " 'statutory threshold' of prevailing party status" only " 'if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.' " *Id.* at 789, 109 S.Ct. at 1492 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)). The Court added that, at a minimum, to be considered a prevailing party within the meaning of § 1988, "the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.* at 792, 109 S.Ct. at 1493 (citing *Hewitt v. Helms,* 482 U.S. 755, 760–61, 107 S.Ct. 2672, 2675–76, 96 L.Ed.2d 654 (1987)). The Court added, "[b]eyond this absolute limitation, a technical victory may be so insignificant, and be so near the situations addressed in *Hewitt* ... as to be insufficient to support prevailing party status." *Id.*

The case of *Hewitt v. Helms,* 482 U.S. 755, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987), is particularly instructive since the plaintiff was

not awarded monetary damages but was declared the prevailing party by the Third Circuit due to an earlier determination that his constitutional rights had been violated. Because the plaintiff had obtained "a form of judicial relief which serves to affirm the plaintiff's assertion that the defendants' actions were unconstitutional and which will serve as a standard of conduct to guide prison officials in the future" the court of appeals declared the plaintiff the prevailing party. 780 F.2d 367, 370 (3d Cir.1986).

The Supreme Court in reversing the Third Circuit, required that a "plaintiff receive at least some relief on the merits of his claim before he can be said to prevail." 482 U.S. at 760, 107 S.Ct. at 2675. In conclusion, the Court stated "that a favorable judicial statement of law in the course of litigation that results in judgment against the plaintiff does not suffice to render him a 'prevailing party.'" *Id.* at 763, 107 S.Ct. at 2677.

In its brief, the City of Richmond cites to *Spencer v. General Elec. Co.,* 894 F.2d 651 (4th Cir.1990) for support of its argument that People Helpers' final success on the merits of the case, compared with the relief sought, does not make People Helpers the prevailing party. In *Spencer,* this court noted that "in a rare case, a plaintiff's technical success on a claim may be so *de minimis* that it cannot be said that the plaintiff has 'prevailed' for fee-shifting purposes ... [I]f we were to look only at the one dollar below in evaluating Spencer's success, we be might faced with such a rare case." *Id.* at 662. However, in *Spencer,* this court affirmed the district court's finding that the lawsuit served "as a catalyst for the prompt development and promulgation of G.E.'s revised [anti-harassment] policy" and therefore recognized Spencer as the prevailing party. *Id.* See also *Hewitt,* 482 U.S. at 760–61, 107 S.Ct. at 2676 ("It is settled law, of course, that relief need not be judicially decreed in order to justify a fee award under § 1988. A lawsuit sometimes produces voluntary action by the defendant that affords the plaintiff all or some of the relief he sought through judgment ... When that occurs, the plaintiff is deemed to have prevailed despite the absence of a formal judgment in his favor.").

Applying the principles enunciated above, we are satisfied that People Helpers is not the prevailing party of this lawsuit. First, in its complaint People Helpers sought $4 million in damages, $1 million in compensatory and $3 million in punitive. In light of the jury's verdict and our vacating of the punitive damages award, People Helpers has failed to collect one dollar of these claims. The Supreme Court has cautioned "[w]here the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis,* a district court would be justified in concluding that even the 'generous formulation' we adopt today has not been satisfied." *Texas State Teachers,* 489 U.S. at 792, 109 S.Ct. at 1494. Although the jury did find in favor of People Helpers, this verdict has not altered the relative positions of the parties. In essence, People Helpers has not legally benefitted from the jury's determination that the City violated the Fair Housing Act. In this posture, we find the jury's resolution to be so insignificant as to be *de minimis.* Therefore, the verdict does not qualify People Helpers as the prevailing party for purposes of attorney's fees and costs.

As a result of the jury verdict, the district court granted People Helpers injunctive relief. This injunction prevents the City from coercing, harassing, intimidating, or interfering with People Helpers or its clients. The injunction does not, however, restrict legitimate conduct of the City, namely the enacting of city ordinances and other policies designed to effectively administer the City. People Helpers has the satisfaction of knowing that the City cannot harass it with discriminate maneuvers, but People Helpers is not immune from traditional governmental regulation. The distinction between valid regulation and discriminatory conduct is an important one because the Supreme Court has required us to examine the relative positions of the parties before and after the completion of litigation. According to *Texas State Teachers,* People Helpers must be able to point to a resolution of the dispute "which changes the legal relationship between itself and the defendant." 489 U.S. at 792, 109 S.Ct. at 1493. Following the jury verdict and the entry of the permanent injunction, Peo-

ple Helpers is still under the direct authority of the City, which has the power to tax and regulate all nonprofit organizations, like People Helpers, in its jurisdiction. While People Helpers did obtain some form of relief, such relief has not altered the relative positions of the parties.

People Helpers has not forced an extrajudicial remedy, as in *Spencer,* so as to strengthen its claim for prevailing party status. Looking at the jury's verdict and the permanent injunction, we are not convinced that the final outcome has altered the relative positions of the parties as contemplated by the Supreme Court for purposes of determining a prevailing party. We therefore reverse the district court's finding that People Helpers is the prevailing party and vacate the award of attorney's fees and costs.

## V.

■ People Helpers alleged that the City violated the district court's injunctive order by wrongfully recommending that People Helpers be denied tax-exempt status. The district court agreed and concluded that the City's abatement of People Helpers' outstanding taxes and the subsequent reinstatement of the taxes, together with the denial of People Helpers' tax exempt request was in violation of the injunctive order.

After the court's injunction had been entered, People Helpers received a tax notice for personal property. Robert Elam, president of People Helpers, had several conversations with individuals in the City's Department of Finance about abatement of the personal property taxes. Elam was advised that exemptions were not automatic and that People Helpers was not exempt by classification.

However, Mr. Elam continued to press the issue. He made several phone calls to the City's Finance Department requesting tax exempt status. His requests were denied by at least two City employees. Undaunted by the rejections, Elam persuaded a third City employee to exempt his organization from payment of personal property taxes for 1992. However, this exemption was entered in error and the assessment was later reinstated by Jay Doshi, the Tax Audit Manager for the

City. Doshi testified that he was unaware of any pending litigation between the City and People Helpers when he reassessed the personal property taxes.

Unable to settle his tax problems with the City's Tax Manager, Elam called his district City Council Member to ask that People Helpers' request for tax exempt status be placed before the City Council Legislative Committee.

To obtain tax exempt classification, a nonprofit organization must be designated by the Virginia General Assembly under the process outlined in the Virginia Code. *See* Virginia Code Ann. § 30–19.04 (Michie 1992). To receive tax exempt classification from the General Assembly, an organization must first receive consideration for such classification from its local governing body. *See id.* In Richmond, the City Council is responsible for appointing a legislative committee, composed of several City Council members, to consider the "legislative package" which the City will support and later pass to the General Assembly for final approval. This "legislative package" includes any recommendation for tax exempt status for non-profit organizations.

The City Council's Legislative Committee met in November 1992 to consider People Helpers' request for tax exemption and a number of other items of business. Mr. Doshi, the City's Tax Manager, attended the meeting, and recommended against approval of People Helpers' request because of outstanding unpaid personal property taxes for 1990 and 1991. The Legislative Committee recommended against granting People Helpers tax exempt status.

■ We review the district court's findings of fact for clear error. *Crawford v. Air Line Pilots Ass'n Int'l,* 992 F.2d 1295, 1297 (4th Cir.1993). However, the clear error standard may encompass a determination that the findings under review were induced by an erroneous view not supported by substantial evidence or made without properly taking into account substantial evidence to the contrary. *Moore v. City of Charlotte, N.C.,* 754 F.2d 1100, 1104 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985).

The injunctive order prohibited the City of Richmond and its employees from coercing, harassing, intimidating, or interfering with People Helpers. We cannot see how the conduct of the City, specifically the conduct of the individuals employed by the Tax Management Department, harassed or interfered with People Helpers when such persons simply assessed personal property taxes that were rightfully due to the City. People Helpers was not a tax exempt organization and was not entitled to special treatment simply because the City had been enjoined from harassing the People Helpers organization. We find that the City, which made a mistake when it abated People Helpers' 1992 personal property taxes, may not be precluded from correcting such a mistake because the correction may be perceived by People Helpers as a violation of the injunction.

Finally, the decision to deny the tax exempt status requested by People Helpers was a legislative decision, made by a vote of five City Councilpersons. Although the Tax Manager, Mr. Doshi, recommended denial of the tax exempt recommendation, the final decision was reached by a committee which reviewed all relevant criteria. Doshi testified that his recommendation to the committee that People Helpers not be designated tax exempt was based on standard City policy and past practices.

■ As noted earlier, the Virginia General Assembly has allowed local governing bodies to make recommendations to the General Assembly concerning tax exemptions for nonprofit corporations. Thus, the City's consideration of People Helpers' request for tax exempt status was a matter rightly within its jurisdiction. A legislative function, such as that performed by the City, should be afforded judicial deference unless it is evident that impermissible criteria were considered. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 500, 109 S.Ct. 706, 725, 102 L.Ed.2d 854 (1989) ("The factfinding process of legislative bodies is generally entitled to a presumption of regularity and deferential review by the judiciary. But when a legislative body chooses to employ a suspect classification, it cannot rest upon a generalized assertion as to the classification's relevance to its

goals.") (citations omitted); *Wall Distrib., Inc. v. City of Newport News, Va.*, 782 F.2d 1165, 1169 (4th Cir.1986) ("Judicial review goes only to whether the legislative determination of justification and fitness is not facially without factual support, hence not arbitrary and capricious.") (citation omitted). The evidence reflects that the City's recommendation was made after evaluating permissible criteria and was not based, as People Helpers alleges, on impermissible considerations. Under these circumstances, judicial deference to the actions of the legislative committee was appropriate. Therefore, the district court's finding of contempt and its order that People Helpers' request for tax exempt status be reprocessed is vacated.

VI.

For the foregoing reasons, the punitive damages award, the court's assessment of attorney's fees and costs, and the court's contempt order are all VACATED.

*VACATED*